## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. 17-21545-MC-WILLIAMS/TORRES

IN RE APPLICATION OF MTS BANK,
PURSUANT TO 28 U.S.C. § 1782,
FOR JUDICIAL ASSISTANCE IN
OBTAINING EVIDENCE FOR USE IN A
FOREIGN AND INTERNATIONAL
PROCEEDING.

_____/

### ORDER ON ALEXANDER KRINICHANSKIY'S
### MOTION TO QUASH SUBPOENAS

This matter is before the Court on Alexander Krinichanskiy's ("A.K.") Motion

to Quash Subpoenas ("Motion") from MTS Bank ("MTS") pursuant to 28 U.S.C. §

1782 and Rule 45(d)(3) of the Federal Rules of Civil Procedure.   [D.E. 11].

Specifically, A.K. seeks to quash subpoenas issued to him and those directed to

Bank of America, Chase Bank, Citibank, TD Bank, and Wells Fargo Bank (the

"Florida Banks").  On June 30, 2017, MTS responded to A.K.'s Motion [D.E. 15] to

which A.K. did not reply.  Therefore, A.K.'s Motion is now ripe for disposition.  After

careful  consideration  of  the  Motion,  response,  relevant  authority,  and  for  the

reasons discussed below, A.K.'s Motion is **DENIED**.

### I.      BACKGROUND

MTS is a foreign bank registered in the Russian Federation.  MTS had prior

business and financial dealings with a private Russian airline company, commonly

referred to as Transaero – a company also registered in the Russian Federation.

Transaero is currently the subject of bankruptcy proceedings pending in Arbitrazh

Court, Saint Petersburg, Russia.  MTS is a creditor of Transaero, who was notified of the Russian bankruptcy, filed a claim in bankruptcy, and is a party to those proceedings.  MTS previously issued an initial line of credit to Transaero in 2010, and subsequent loans were extended each year until Transaero's bankruptcy in 2015.  At the time of the bankruptcy petition in 2015, Transaero owed MTS over fifty-seven million U.S. dollars and the debt remains unpaid while the bankruptcy case remains pending.   Following the bankruptcy application, MTS Bank supposedly conducted a forensic audit of Transaero's accounting records and documents submitted in support of the credit line applications.  The audit allegedly revealed widespread falsifications of data and hidden operational losses in Transaero's financials.   The funds obtained from creditors were purportedly siphoned out of Transaero through creative financial structures, accounting loopholes, and payments of unlawfully inflated dividends.

A.K. is a former top-level executive of Transaero who allegedly negotiated the loans and signed the loan agreements on behalf of Transaero.  Public records purportedly establish that A.K. owns and maintains a million-dollar residence at 16175 Rio Del Paz, Delray Beach, Florida, 33446 and maintains a local Florida phone number.  [D.E. 3-2].  He apparently pays real estate taxes and has two automobiles registered in his name with the Florida Department of Highway Safety and Motor Vehicles.

In April 2017, MTS came to this Court *ex parte* seeking discovery – both testimony and documentary items – from A.K. and the Florida Banks regarding

A.K.'s personal financial and account holdings.   The purpose of the *ex parte* application is to obtain evidence from persons and custodians of records in Florida for use in the Russian bankruptcy court and in a contemplated civil action against Transaero's former directors and shareholders in the British Virgin Islands and/or Russia for debt recovery, securities fraud, civil money laundering, conversion, and other claims.  [D.E. 1].  MTS is seeking to obtain documents and to depose A.K. on issues related to irregularities in financial statements, payments of dividends, transfers of funds received from MTS to personal U.S. based accounts and reinvestment in U.S. businesses.  [D.E. 3-2].   The subpoenas in this case specify the areas of questioning and list specific documents that have been requested.

Additional subpoenas have been issued to Florida banks named in the application seeking banking records that are expected to reflect monetary flows to U.S. based personal and business accounts of the executives, including A.K., who signed Transaero's fraudulent accounting reports and received funds from Transaero in the form of inflated dividends or otherwise.  On June 6, 2017, the Court entered an Order granting the *ex parte* application and permitted MTS to conduct discovery.

## II.     ANALYSIS

### A.     *The Statutory Requirements of Section 1782*

The first issue in A.K.'s Motion is whether the subpoenas should be quashed for failing to comply with the statutory requirements of 28 U.S.C. § 1782.  The purpose of § 1782 is "to provide federal-court assistance in gathering evidence for

3

use in foreign tribunals." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247 (2004); *see also In the Matter of Lancaster Factoring Co., Limited,* 90 F.3d 38, 41 (2d Cir. 1996) (finding that the purposes of § 1782 are "equitable and efficacious procedures in United States courts for the benefit of tribunals and litigants involved in foreign litigation" and "to encourag[e] foreign countries by example to provide similar assistance to our courts.") (internal citations omitted).  The statute "is the product of congressional efforts, over the span of nearly 150 years, to provide federal-court assistance in gathering evidence for use in foreign tribunals." *Id*. at 248.

Pursuant to section 1782, a United States District Court, upon the application of an interested person, may order a person residing or found in the district to give testimony or produce documents for use in a foreign proceeding:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation.  The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court.  By virtue of his appointment, the person appointed has power to administer any necessary oath and take the testimony or statement.  The order may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement or producing the document or other thing.  To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

28 U.S.C. § 1782.

4

As an initial matter, a district court must first determine whether there is a statutory basis for the § 1782 application.  The Eleventh Circuit has found that there are four statutory requirements that must be considered in making that determination:

> A district court has the authority to grant an application for judicial assistance if the following statutory requirements in § 1782(a) are met: (1) the request must be made 'by a foreign or international tribunal,' or by 'any interested person'; (2) the request must seek evidence, whether it be the 'testimony or statement' of a person or the production of 'a document or other thing'; (3) the evidence must be 'for use in a proceeding in a foreign or international tribunal'; and (4) the person from whom discovery is sought must reside or be found in the district of the district court ruling on the application for assistance. 28 U.S.C. § 1782(a).

*In re Clerici*, 481 F.3d 1324, 1331–32 (11th Cir. 2007).  If the statutory requirements are met, district courts must always determine whether the requested discovery complies with the Federal Rules.  "For example, if the subpoena at issue is directed to a party that resides or is found in the district, same must comply with Fed. R. Civ. P. 45." *In re Chevron Corp.*, 2012 WL 3636925, at *6 (S.D. Fla. June 12, 2012) (citing *In re Application of Inversiones v. Gasolinera Petroleos Vanezuela, S. De R.L.,* 2011 WL 181311, at * 6 (S.D. Fla. Jan. 9, 2011)).  Assuming that all of the above requirements are met, section 1782 "authorizes, but *does not require*, a federal district court to provide judicial assistance to foreign or international tribunals or to 'interested person[s]' in proceedings abroad." *Intel Corp.*, 542 U.S. at 247 (emphasis added); *see also United Kingdom v. United States*, 238 F.3d 1312, 1319 (11th Cir. 2001) ("[A] district court's compliance with a § 1782 request is not mandatory").

5

In addition to the statutory requirements, district courts must also consider several discretionary factors articulated by the Supreme Court in *Intel*, including: (1) whether the respondents are parties in a foreign proceeding, (2) the nature of the foreign tribunal, the character of the proceedings abroad, and the receptivity of the foreign tribunal to assistance from a U.S. federal court, (3) whether the discovery application conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States, and (4) whether the request is intrusive or burdensome. *See Intel Corp.*, 542 U.S. at 264-65. Ultimately, district courts must exercise their discretion to achieve the two aims of section 1782, which are to "provid[e] efficient means of assistance to participants in international litigation and [to] encourage[e] foreign countries by example to provide similar means of assistance to our courts." *In re Metallgesellschaft,* 121 F.3d 77, 79 (2d Cir. 1997).

Here, A.K. argues that the statutory requirements have not been met in this action. First, A.K. emphasizes that he is a Russian-borne citizen who lives and works full time in Russia. He allegedly does not reside in Florida, nor does he maintain or conduct continuous contact in Florida. He has supposedly not been present in Florida since this action was filed nor since the subpoenas were issued. Second, A.K. has purportedly not been served in Florida and has not appointed or authorized anyone in Florida to accept service on his behalf. Because A.K. does not reside in Florida nor has he allegedly been served, A.K. contends that the MTS subpoena must be quashed for failing to meet the statutory requirements of § 1782.

6

In response, MTS contends that the first statutory requirement is easily met because MTS is undeniably a party in an ongoing Russian bankruptcy proceeding and will be a plaintiff in a contemplated debt recovery/civil fraud action.   MTS believes that the second requirement is also certainly met because MTS seeks testimony and documentary evidence as listed in the subpoenas.   Third, MTS notes that the evidence is sought for the use in a Russian bankruptcy court, which is obviously a foreign tribunal within the statutory definition of § 1782.  *See, e.g.*, *In re: Application of Joint Stock Co. Raiffeisenbank*, 2016 WL 6474224, at *3 (N.D. Cal. Nov. 2, 2016) ("'[T]he discovery is for use in a proceeding before a foreign tribunal' because RFB seeks to use the discovery gained from Zubarev in the Russian Proceedings before the Arbitrazh Courts in Russia.").

In putting aside the minor dispute over the first three requirements, the final statutory requirement – whether A.K. "resides" or can be "found" in this district – is the most contested issue in A.K's Motion.[1]  As support, MTS relies on the decision in *In re Application of Inversiones y Gasolinera Petroleos Vanezuela, S. de R.L.*, 2011 WL 181311, at *8 (S.D. Fla. Jan. 19, 2011).   In that case, Judge Simonton found that the statutory language of being "found" under Section 1782 is almost the equivalent of being found in the jurisdiction for the purpose of personal jurisdiction. In reaching that holding, Judge Simonton relied on the Second Circuit's decision in *In re Application of Edelman,* 295 F.3d 171 (2d Cir. 2002).

---

[1]      There is no dispute between the parties that the Florida banks can be "found" in this district.

In *Edelman*, the Second Circuit recognized that the statutory language of being "found" must be liberally interpreted and is satisfied when a non-party person travels to the United States and is served with a subpoena for a deposition. The Second Circuit explained that "if so-called tag jurisdiction was sufficient to subject a person to liability, it was sufficient to subject a potential witness to discovery proceedings." 2011 WL 181311, at *8 (citing *Edelman*, 295 F.3d at 179-80; *In re Application of Yukos Hydrocarbons Invs. Ltd.,* 2009 WL 5216951 (N.D.N.Y. Dec. 30, 2009); Hans Smit, *American Assistance to Litigation in Foreign and International Tribunals: Section 1782 of Title 28 of the U.S.C. Revisited,* 25 Syracuse J. Int'l. L. & Com. 1, 10 (1998) ("The evident statutory purpose [of section 1782] is to create adjudicatory authority based on presence.")).

MTS argues that the same reasoning can be applied in this case. First, A.K. is purportedly subject to personal jurisdiction under Florida law based on his ownership of real property at 16175 Rio Del Paz, Delray Beach, Florida 33446. Specifically, MTS relies on Florida Statute section 48.193 that provides:

> (1)(a) A person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from any of the following acts:
> . . .
> 3. Owning, using, possessing, or holding a mortgage or other lien on *any real property* within this state.

Fla. Stat. § 48.193 (emphasis added). The fact that A.K. owns property in the state of Florida is allegedly sufficient by itself to satisfy the section 1782 jurisdictional

requirement of being "found" in this district.  Separately, MTS believes that A.K. can be "found" in this district based on his substantial activities in Florida, such as purchasing and registering automobiles with the Florida Department of Highway Safety and Motor Vehicles – not to mention the possession of a Palm Beach county area code phone number and several financial transactions in Florida.

We agree with MTS that the four statutory requirements of section 1782 have been met.  The question of what it means to "reside" or be "found" in a locale has been broadly interpreted based on common sense understandings of the words, and relevant case law on territorial jurisdiction.[2]  As such, it is evident that the relationship between section 1782 and the contours of personal jurisdiction are *not* the same.  While the Second Circuit and Judge Simonton have previously held that a person may be "found" for the purpose of section 1782 when he or she is served in a manner consistent with conferring personal jurisdiction, this does not necessarily equate the two doctrines.  Those decisions merely "stated that a person is 'found' in a jurisdiction for purposes of § 1782(a) if he is personally served while physically present in the jurisdiction." *In re Godfrey*, 526 F. Supp. 2d 417, 421 (S.D.N.Y. 2007) (citing *Edelman*, 295 F.3d at 179).  "This does not indicate an intention to make the availability of discovery under § 1782 subject to the vagaries of individual states' rules of service of process and personal jurisdiction.  On the contrary, it merely

---

[2]    For example, in *Burnham v. Superior Court of California,* 495 U.S. 604 (1990), the Supreme Court authorized the exercise of personal jurisdiction based on nothing more than physical presence. *See also Kadic v. Karadzic,* 70 F.3d 232, 246– 47 (2d Cir. 1995) (upholding the Southern District's exercise of personal jurisdiction over foreign national served with summons while physically present in the Southern District).

represents a common sense holding that one who is personally served with process while present in a district is 'found' in that district for the purpose of foreign discovery applications." *In re Godfrey*, 526 F. Supp. 2d at 421; *see also In re Application of Thai-Lao Lignite (Thailand) Co., Ltd.*, 821 F. Supp. 2d 289, 295 (D.D.C. 2011) ("Courts considering whether to grant a petition for assistance pursuant to 28 U.S.C. § 1782 have analyzed their authority by referencing the language in section 1782—whether it is a district 'in which a person resides or is found'—rather than discussing whether the Court has subject matter and personal jurisdiction over the entity or person from whom discovery is sought.").

Here, MTS has produced unrebutted evidence that in the state of Florida A.K. (1) owns real property, (2) owns two automobiles, (3) pays real estate taxes, (4) owns a Florida telephone number, and (5) conducts financial transactions. When coupling the aforementioned evidence with the statutory language of § 1782 that requires "the person from whom discovery is sought [to] reside or be found in the district of the district court ruling on the application for assistance," 28 U.S.C. § 1782(a), we hold that all of the statutory requirements of § 1782 have been met. *Cf.* Fla. Stat. § 48.193 ("Owning, using, possessing, or holding a mortgage or other lien on any real property within this state" subjects a person to the jurisdiction of the courts of Florida).

### B.   *Intel's Discretionary Factors*

Once the statutory requirements of § 1782 have been met, district courts must also consider the four discretionary factors set forth in *Intel*, including: (1) whether the respondents are parties in a foreign proceeding because "the need for § 1782(a) generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant," (2) the nature of the foreign tribunal, the character of the proceedings abroad, and the receptivity of the foreign tribunal to assistance from a U.S. federal court, (3) whether the discovery application conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States, and (4) whether the request is intrusive or unduly burdensome. *Intel Corp.*, 542 U.S. at 264-65. While the four factors are commonly discussed on an individual basis, they "are not stand-alone categorical imperatives" but rather "involve overlapping considerations, [which] are considered collectively by the court." *In Matter of Appl. of Action & Protection Found. Daniel Bodnar*, 2014 WL 2795832, *5 (N.D. Cal. June 19, 2014) (quotation omitted).

A.K. does not address the first *Intel* factor; rather, he focuses exclusively on the second, third and fourth factors. MTS argues that the reason A.K. omitted any discussion of the first *Intel* factor is because it is so easily met. In other words, the Florida banks and A.K. are obviously not participants in the foreign Russian proceedings which is why MTS seeks relief under § 1782. As such, the first *Intel* factor allegedly favors MTS because section 1782 generally applies to individuals outside the jurisdiction of the foreign tribunal – i.e. nonparticipants. *See, e.g.*, *In re*

11

*Clerici*, 481 F.3d at 1335 ("In many § 1782 cases, the person from whom discovery is sought is a nonparticipant in the foreign proceeding and outside the jurisdiction of the foreign tribunal.") (citing *United Kingdom v. United States*, 238 F.3d 1312, 1314 (11th Cir. 2001) (seeking sensitive law enforcement documents possessed by the United States to be used in a criminal prosecution in England); *Lo Ka Chun v. Lo To*, 858 F.2d 1564, 1565 (11th Cir. 1988) (seeking the issuance of subpoenas duces tecum to residents of the United States who were non-party witnesses in an action pending in Hong Kong); *In re Request for Assistance from Ministry of Legal Affairs of Trinidad & Tobago*, 848 F.2d 1151, 1152 (11th Cir. 1988) (seeking authenticated copies of bank records from non-party bank)).  As such, MTS argues that the first *Intel* factor weighs in its favor because there is no question that the subpoenas are directed at non-parties outside of the jurisdictional reach of the foreign tribunal.

We agree with MTS that the first *Intel* factor is not at issue in A.K.'s Motion. In any event, we also agree with MTS that the first factor favors the use of section 1782 because the Florida banks and A.K. are certainly nonparticipants in the Russian bankruptcy proceedings.  If A.K. or the Florida banks were part of the foreign proceedings, it may have been an indicator that we should be less inclined to grant the discovery request because both would have already been subject to the jurisdiction of the foreign tribunal.  Because there is no dispute that A.K. or the Florida banks are non-participants in the Russian bankruptcy proceedings, we will proceed to the second, third, and fourth *Intel* factors to determine if they also weigh in favor of MTS.

### C.   *The Second Factor: Receptivity of the Foreign Tribunal*

The second *Intel* factor examines whether the foreign tribunal "is willing to consider the information sought." *Siemens AG v. W. Digital Corp.*, 2013 WL 5947973, *3 (C.D. Cal. Nov. 4, 2013). Another nation's limit on discovery "within its domain for reasons peculiar to its own legal practices, culture, or traditions . . . do[es] not necessarily signal objection to aid from United States federal courts." *Intel*, 542 U.S. at 261 (citing *In re Bayer AG*, 146 F.3d 188, 194 (3d Cir. 1998) ("[T]here is no reason to assume that because a country has not adopted a particular discovery procedure, it would take offense at its use.")).

Instead, courts look for "authoritative proof that a foreign tribunal would *reject* evidence obtained with the aid of § 1782." *In re Kreke Immobilien KG*, 2013 WL 5966916, at *5 (S.D.N.Y. Nov. 8, 2013) (quoting *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1100 (2d Cir. 1995)). "Such proof, as embodied in a forum country's judicial, executive, or legislative declarations that specifically address the use of evidence gathered under foreign procedures . . . provide helpful and appropriate guidance to a district court in the exercise of its discretion." *Euromepa*, 51 F.3d at 1100 (footnotes omitted); *Schmitz v. Bernstein Liebhard & Lifshitz, LLP.*, 376 F.3d 79, 84 (2d Cir. 2004) (denying discovery because "the German government was obviously unreceptive to the judicial assistance of an American federal court" since it requested the court to deny petitioner's § 1782 application); *In re Ex Parte Application of Qualcomm Inc.*, 162 F. Supp. 3d 1029, 1040 (N.D. Cal. 2016) (finding that the second *Intel* factor weighed in favor of respondents because the Korean

13

Fair Trade Commission's amicus brief asked the court to deny petitioner's applications and that it had no need or use for the requested discovery).  "Absent this type of clear directive, however, a district court's ruling should be informed by section 1782's overarching interest in 'providing equitable and efficacious procedures for the benefit of tribunals and litigants involved in litigation and international aspects.'" *Euromepa*, 51 F.3d at 1100 (citation omitted).

As support for his position that the discovery sought is wholly improper under Russian law and its corresponding discovery practices, A.K. relies on the declaration of Igor Sergeevich Udalischev.  Mr. Udalischev is a citizen of the Russian Federation and a duly licensed lawyer who practices and has expertise in handling and litigating Russian court proceedings, including permissible proof-gathering and discovery practices.  According to Mr. Udalischev, per Russian law and procedures, once a corporate debtor is placed into bankruptcy proceedings, it is allegedly the Russian court's function to determine and establish whether the entity is, in fact, bankrupt.  Until such a determination is made, creditors in Russian bankruptcy proceedings purportedly have no right to file, litigate, or pursue claims against, nor seek independent discovery of any kind from a debtor.

During the pendency of Russian bankruptcy proceedings, Mr. Udalischev claims that the pursuit and satisfaction of a creditor's claims remain limited.  Creditors in bankruptcy proceedings are supposedly permitted to exercise their rights to pursue and satisfy their claims only by either direct involvement or participation at a meeting of creditors or indirectly through an elected council of

creditors. However, no matter how a creditor proceeds, a creditor purportedly has no right to perform or undertake any action whatsoever aimed at establishing, preserving, saving, or investigating/tracing a debtor's property or assets, as those functions are reserved and performed solely by the Russian bankruptcy trustee.

Furthermore, A.K. argues that Russian bankruptcy creditors lack the ability, power, or right to pursue any discovery whatsoever directly from a corporate debtor under any circumstances. A creditor's inability to seek discovery allegedly extends to a corporate debtor's former executives, directors, employees, managers, and shareholders. Hence, A.K. contends that it is impermissible and inappropriate for Russian bankruptcy creditors to seek discovery of any kind directly from corporate debtors, including former executives, employees, or management body members or shareholders. Bankruptcy creditors are also supposedly not permitted to initiate any judicial proceeding or action of any kind to attempt to discovery or obtain any financial property holdings, or any other economic information of any kind about a corporate debtor from the debtor itself nor any other independent source.[3] Given the extensive limitations under Russian law, A.K. suggests that the subpoenas must be quashed.

MTS strongly disputes the legal reasoning and conclusions found in A.K.'s Motion. MTS relies on the declaration of Denis Vetrov – a qualified jurist practicing law in Russia. Mr. Vetrov concludes in his declaration that Russian courts are

---

[3]     These limitations also allegedly extend to a Russian bankruptcy trustee who cannot request any information regarding the activities or financial information of a corporate debtor from the corporation's former executives, employees, or management body members nor from its individual shareholders.

absolutely receptive to discovery obtained in foreign jurisdictions and that several provisions under Russian law explicitly support this position.  For example, Article 66(a) of the Russian Code provides that "[e]vidence shall be presented by the persons participating in a case.  Copies of the documents submitted to court by a person participating in a case shall be directed to other persons participating in the case if they do not have these documents."  [D.E. 15].

MTS also relies on Article 75 that provides that "[a] document obtained in a foreign state shall be recognized by an arbitration court as written evidence if it is legalized in the established procedure."  [D.E.15]; *see also* Article 255 ("Documents, issued, compiled or certified in accordance with the stablished form by the competent bodes of foreign states out of the boundaries of the Russian Federation in conformity with the norms of foreign law with respect to Russian organizations and citizens, or to foreign persons, *shall be accepted by arbitration courts in the Russian Federation*, if said documents are legalized, or if an apostille is placed on them, unless otherwise is established by an international treaty of the Russian Federation.") (emphasis added).  Because several sections of Russian law allow for the use of foreign discovery, MTS suggests that the third *Intel* factor clearly weighs in its favor.

After a complete review of the expert declarations, the arguments presented, and the authority cited therein, we agree that A.K.'s arguments are unpersuasive. First, A.K. relies on the declaration of Mr. Udalischev for the proposition that Russian law bars outside discovery, yet A.K. fails to cite a *single* Russian provision

that supports that conclusion.  At one point, Mr. Udalischev paraphrases Article 66 of the Russian Code in support of the position that under no circumstances are creditors permitted to request information from any individuals.  Mr. Udalischev states in his declaration that "per clause 2, Article 66 of the Law, a Russian bankruptcy trustee does not have the right, ability, nor power to request any information regarding the activities or financial of a corporate debtor from the corporation's former executives, employees, or management body members nor from its individual shareholders."  [D.E. 11-6].  Yet, Article 66 simply lists the powers of an interim receiver during the bankruptcy stages.  None of the language in Article 66 – especially in clause 2 – prohibits creditors or a trustee from seeking discovery from third parties:

> 1. The interim receiver shall be entitled to: lodge a demand with a court of arbitration in his/her name for declaring as null and void the deals and decisions, and also a demand for the application of consequences of the invalidity of the null and void deals concluded or accomplished by the debtor in breach of the provisions of Articles 63 and of the present Federal Law; lodge objections to creditors' claims in the cases specified by the present Federal Law; attend arbitration court hearings dedicated to verification of the availability of a good ground for the debtor's lodged objections to creditors' claims; file a petition with a court of arbitration for the taking of additional measures for preserving the debtor's property, in particular, for an injunction on the accomplishment of deals without the consent of the interim receiver as envisaged by Item 2 of Article 64 of the present Federal Law; file a petition with a court of arbitration for removal of the head of the debtor; obtain any information and documents concerning the debtor's activity; exercise the other powers established by the present Federal Law.
>
> 2. The debtor's managerial bodies shall provide the interim receiver on his/her request with all information concerning the debtor's activity. Information on the debtor and the property thereof, including without limitation, property rights and on liabilities that has been requested by the interim receiver from natural persons, legal entities, state bodies

and local self-government bodies shall be provided by said persons/entities and bodies to the interim receiver within seven days after the receipt of the qualified receiver's request on a free-of-charge basis.

[D.E. 15-6].

Second, Mr. Udalischev claims that Russian law precludes creditors from seeking discovery relating to a debtor's affairs, including a debtor's former shareholders and managers and that creditors may not initiate a judicial action to obtain this discovery. However, Mr. Udalischev never cites any language from the Russian Code that supports that conclusion. This is simply another example of where Mr. Udalischev makes a conclusory argument that Russian law prohibits outside discovery, yet remains unsupported by any specific authority.

A final indicator that A.K.'s arguments miss the mark is the fact that several courts, in recent years, have allowed for discovery in section 1782 cases to proceed for the use in Russian courts:

> There is no indication, let alone any authoritative proof, that the Russian court would reject as evidence any documents gathered with the aid of the witnesses' deposition testimony, nor that it would reject such testimony if offered in support of a request by Imanagement for a Russian court order for the production of particular documents or other evidence. The Court therefore cannot say that the Russian court's statement constitutes authoritative proof that the Russian court would reject evidence gathered with the assistance of discovery under § 1782, or that the refusal to admit the deposition transcripts as testimonial evidence signals a 'lack of receptivity' to 'U.S. federal-court judicial assistance' such that the Court should use its discretion to deny Imanagement's request for discovery.

*In re Imanagement Servs., Ltd.*, 2005 WL 1959702, at *4 (E.D.N.Y. Aug. 16, 2005) (citing *Intel Corp.*, at 264); *see also In re: Application of Joint Stock Co.*

18

*Raiffeinsenbank*, 2016 WL 6474224, at *5 ("The Court is unaware of any authoritative source suggesting the Arbitrazh Courts would be unreceptive to the discovery RFB seeks."); *In re Kolomoisky*, 2006 WL 2404332, at *2 (S.D.N.Y. Aug. 18, 2006) (finding no evidence that the Russian government or the court where the Moscow Action occurred opposes Petitioner's discovery request).

When coupling the lack of support in Mr. Udalischev's declaration with the lack of authoritative evidence that Russian courts are not receptive to American judicial assistance, we agree with MTS that "Russia may actually be receptive to such discovery," and that the second *Intel* factor weighs in favor of MTS. *In re: Application of Joint Stock Co. Raiffeinsenbank*, 2016 WL 6474224, at *5; *see also In re Kreke Immobilien KG*, 2013 WL 5966916, at *1 ("In the absence of authoritative proof that a foreign tribunal would reject evidence obtained with the aid of section 1782, a district court should err on the side of permitting discovery." (citations and internal quotation marks omitted)).

To the extent there are any remaining doubts (and we believe there are none) as to whether the Russian tribunal would consider the evidence sought, a suspicion that the evidence gathered would ultimately be rejected is not enough to overcome the presumption that district courts allow for discovery to proceed under section 1782 to promote the statute's goals of efficiency and comity. *See Euromepa,* 51 F.3d at 1100; *In re Kreke Immobilien KG*, 2013 WL 5966916, at *5 (S.D.N.Y. Nov. 8, 2013) ("Rather than deny a § 1782 request because it suspects that the evidence gathered would ultimately be rejected by the foreign tribunal, a U.S. district court

should presumptively allow discovery to the extent that such a grant would promote the statute's goals of efficiency and comity.") (citation omitted).

### D.      *The Third Factor: Foreign Proof-Gathering Restrictions*

The third *Intel* factor asks whether the § 1782 request "attempt[s] to circumvent foreign proof-gathering limits or other policies of a foreign country or the United States." *Intel*, 432 U.S. at 264-265. "Although courts need not determine if an applicant has exhausted its discovery attempts abroad, 'a perception that an applicant has 'side-stepped' less-than-favorable discovery rules by resorting immediately to § 1782 can be a factor in a court's analysis.'" *In re: Application of Joint Stock Co. Raiffeinsenbank*, 2016 WL 6474224, at *6 (quoting *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2013 WL 183944, at *3 (N.D. Cal. Jan. 17, 2013)). "Put differently, the § 1782 applicant's conduct in the foreign forum is not irrelevant." *In re Appl. of Gilead Pharmasset LLC*, 2015 WL 1903957, at *4 (D. Del. Apr. 14, 2015) (quoting *In re IPC Do Nordeste, LTDA*, 2012 WL 4448886, *9 (E.D. Mich. Sept. 25, 2012)). "This is not the same as a foreign discoverability requirement; the fact that a § 1782 application requests documents that would not be discoverable by the foreign court if those documents were located in the foreign jurisdiction is not enough to render the application a 'circumvention' of foreign rules. However, this factor suggests that a district court should be vigilant against a petitioner's attempt to 'replace a [foreign] decision with one by [a U.S.] court.'" *In re Kreke Immobilien KG*, 2013 WL 5966916, at *6 (S.D.N.Y. Nov. 8, 2013) (citations omitted).

20

Similar to the second *Intel* factor, A.K. relies on the declaration of Mr. Udalischev to argue that the discovery request from MTS is an improper attempt to undermine Russian policies and procedures that restrict discovery in this type of action.  Yet, we agree with MTS that the Court has no reason to believe that there are policies or laws in Russia or the United States that preclude the discovery sought.  A.K. only makes conclusory arguments that the discovery sought is barred by Russian law, but never points to any specific authority to support those contentions.  By contrast, MTS refers to several authorities that suggest that U.S. courts have found Russian bankruptcies to fall within the scope of § 1782.  *See, e.g.*, *Lancaster Factoring Co. v. Mangone*, 90 F.3d 38, 42 (2d Cir. 1996) ("A bankruptcy proceeding, by its nature, is one in which the value of the debtor's estate is adjudicated.  Such a proceeding is within the intended scope of § 1782.").

More importantly, we are unaware of any restrictions imposed by Russian courts in proof-gathering procedures that would prohibit MTS from obtaining and introducing the discovery sought via section 1782.  There are also no indicators that A.K. or the Florida banks are within the jurisdictional of the Russian tribunal.  Furthermore, there is no evidence to suggest that MTS has received an adverse decision from a Russian tribunal regarding prior discovery requests or is seeking relief under section 1782 as an attempt to sidestep Russian policies and procedures.  Accordingly, we find that the third *Intel* factor favors MTS.

### E. The Fourth Factor: Overbroad and Unduly Burdensome

A.K.'s final argument in support of his Motion is that the subpoenas are (1) overbroad and impose an undue burden on the Florida banks, and (2) violate the due process and privacy rights of A.K.  To be clear, a district court may consider whether an application contains "unduly intrusive or burdensome requests," *Intel Corp.,* 542 U.S. at 265, is "made in bad faith, for the purpose of harassment," *Euromepa S.A.,* 51 F.3d at 1101 n. 6, or is part of a "fishing expedition," *In re Request for Assistance from Ministry of Legal Affairs of Trinidad and Tobago,* 848 F.2d 1151, 1156 (11th Cir. 1988), *abrogated on a different ground by Intel Corp.,* 542 U.S. at 259.

A.K. suggests that the subpoenas seek documents that are not probative of the claims *currently* pending and that the documents may be obtained from other sources, including Transaero and its banking institutions.  A.K. further contends that the subpoenas improperly seek broad-based business and personal financial documents over a seven year period and are not properly limited in time.  For example, Transaero's Russian bankruptcy commenced in 2015, yet A.K. contends that he has not worked for nor received any compensation from Transaero since that time.  Thus, the subpoenas, as they stand now, purportedly equate to nothing less than a wide net designed to impose an undue burden on A.K.

Furthermore, A.K. argues that MTS seeks subpoenas for use in the Russian bankruptcy and/or "contemplated proceedings" in other jurisdictions.  Yet, the discovery applied for and permitted in this case is supposedly overbroad and seeks

materials strictly personal, private, and confidential in nature.  In other words, A.K. suggests that the documents sought have nothing to do with Transaero – the party allegedly indebted to MTS – nor the Russian bankruptcy.  A.K. also argues that there has been no showing as to how the requested discovery will be used or otherwise assist MTS in the Russian bankruptcy, which is the only pending proceeding at this time.  Because the discovery sought attempts to use sensitive and private information to engage in a fixing expedition for other "contemplated proceedings", A.K. believes that the subpoenas should be quashed accordingly.

In response, MTS contends that, as a creditor in the Russian bankruptcy case and as a future plaintiff in a contemplated action for fraud, the subpoenas seek relevant information concerning the disposition of its funds and information on any transfer of illegally gotten funds through Florida based accounts.  As such, MTS compares its document requests to similar ones that courts have found acceptable in other foreign bankruptcy proceedings.  *See, e.g.*, *In re Application of Setraco Nigeria Ltd.*, 2013 WL 3153902, at *4 (M.D. Fla. June 19, 2013); *In re Application of Hill*, 2005 WL 1330769, at *5 (S.D.N.Y. June 3, 2005).  MTS also argues that the discovery sought is limited to the time period beginning on November 12, 2010 – the date of the initial loan by MTS to Transaero.  MTS opposes the implicit time frame suggested by A.K. because the relevant time period is not solely focused on when A.K. left Transaero.  MTS explains that a debt is still outstanding and that transfers may have occurred after A.K.'s departure to U.S. based accounts and

reinvestment of the funds to U.S. businesses.   Therefore, MTS believes that it is appropriate to seek records from November 12, 2010 to the present.

As for A.K.'s arguments concerning whether the subpoenas are unduly burdensome, MTS argues that abstract assertions of burden, privacy, or intrusiveness do not suffice under Eleventh Circuit precedent.  *See, e.g.*, *Application of Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc.*, 747 F.3d 1262, 1273 (11th Cir. 2014) (finding that the respondent "failed to identify which particular discovery requests . . . are unduly burdensome or to provide any specific evidence to support its blanket claim that [the respondent] should be exempted from having to comply with any and all discovery obligations due to overarching concerns about confidentiality that are stated only at the highest order of abstraction.").   MTS contends that A.K. has merely proffered an unsupported legal conclusion that the subpoenas are unduly burdensome without substantiating that position with any evidence or sworn affidavits.  Because A.K's position is allegedly untenable, MTS believes that all of A.K.'s arguments lack merit.

After full consideration of the arguments presented, we agree with MTS that A.K. has failed to present any persuasive reason as to why any of the subpoenas should be quashed.  First, A.K.'s contention that the subpoenas should be restricted solely to proceedings currently pending – and not contemplated actions – is incorrect as a matter of law.  Many parties have made the same argument in connection with section 1782 and courts have uniformly rejected them.  "Section

1782 is designed to support such contemplated claims, including civil and criminal proceedings to be initiated by a private party in a foreign tribunal, even when said proceedings are contemplated but have not yet commenced." *In re Application of Setraco Nigeria Ltd.*, 2013 WL 3153902, at *2 (citing *Intel,* 542 U.S. at 243 (establishing that, for purposes of section 1782, "it is not necessary . . . for the [adjudicative] proceeding to be pending at the time the evidence is sought, but only that the evidence is eventually to be used in such a proceeding"); *In re Application of Mesa Power Group, LLC,* 878 F.Supp.2d 1296, 1303 (S.D. Fla. 2012) ("Section 1782 may authorize and encourage judicial assistance even if the foreign proceeding has not commenced or advanced because § 1782 is not limited to proceedings that are pending . . . In fact, the proceedings need 'only . . . be within reasonable contemplation.'"); *In re Application of Inversiones y Gasolinera Petroleos Valenzuela, S.De R.L.,* 2011 WL 181311, at *10 (S.D. Fla. Jan. 19, 2011) (holding the fact that investigation into crimes "has not yet resulted in formal criminal proceedings does not mean that such proceedings are not still within 'reasonable contemplation' ") (internal citation omitted); *In re Application of Wining (HK) Shipping Co. Ltd.,* 2010 WL 1796579 at *10 (S.D. Fla. 2010) (denying motion to quash order granting 1782 application in support of unfiled, anticipated, arbitration)).

Second, the time period suggested by MTS is appropriate because the basis for the materials sought is to discover whether transfers to U.S. based accounts and businesses occurred *during* A.K.'s employment and *after* he left Transaero.  As such, the subpoenas are not overbroad in temporal scope because they seek to capture all

of the information relevant in a contemplated action for fraud.  If the subpoenas were limited as A.K. suggested, it would fundamentally weaken the purpose of the subpoenas in discovering relevant information on a suspected fraud.

Third, we agree with MTS that A.K. has not demonstrated how the subpoenas are unduly burdensome or intrusive other than abstract assertions of privacy and confidentiality.  A.K. did not support his argument with any specific evidence to support his legal conclusions nor did he present any facts to bolster his position.  *See Coker v. Duke & Co., Inc.*, 177 F.R.D. 682, 686 (M.D. Ala. 1998) (a party objecting on burdensomeness grounds must "substantiate that position with detailed affidavits or other evidence . . . and cannot rely on simple conclusory assertions").  "An objection must show specifically how a [discovery request] is overly broad, burdensome or oppressive, by submitting evidence or offering evidence which reveals the nature of the burden." *Chubb Integrated Systems Limited, v. National Bank of Washington,* 103 F.R.D. 52, 59–60 (D.D.C. 1984); *see also EEOC v. Quad/Graphics, Inc.,* 63 F.3d 642 (7th Cir. 1995).

In other words, A.K. should have made a particular and specific demonstration of fact rather than relying on simple conclusory assertions because "[p]arties 'cannot invoke the defense of oppressiveness or unfair burden without detailing the nature and extent thereof." *Porter v. Nationscredit Consumer Disc. Co.,* 2004 WL 1753255, at *1 (E.D. Pa. July 8, 2004) (quoting *Martin v. Easton Pub. Co.,* 85 F.R.D. 312, 316 (E.D. Pa. 1980)); *see also Ericson v. Ford Motor Co.,* 107 F.R.D. 92 (E.D. Ark. 1985) (finding that a mere showing of burden and expense is

not enough).  Therefore, we find that the final *Intel* factor weighs in favor of MTS and that A.K.'s Motion to quash the subpoenas must be **DENIED**.[4]

### III.   CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** that A.K.'s Motion to Quash Subpoenas is **DENIED**.   [D.E. 11].   Any responsive documents in response to the subpoenas should be produced within fourteen (14) days from the date of this Order.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 25th day of July, 2017.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge

---

[4]     To extent there are any remaining concerns about sensitive business information being produced outside the contours of this case, the parties shall work cooperatively to submit a stipulated protective order to the Court.

27