## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. 17-21545-MC-WILLIAMS/TORRES

IN RE APPLICATION OF MTS BANK,
PURSUANT TO 28 U.S.C. § 1782,
FOR JUDICIAL ASSISTANCE IN
OBTAINING EVIDENCE FOR USE
IN A FOREIGN AND INTERNATIONAL
PROCEEDING.

_____/

## ORDER ON MOTION TO QUASH SUBPOENAS

This matter is before the Court on Alexander Pleshakov's ("Mr. Pleshakov")

and Sky Ocean International, Inc.'s ("Sky Ocean") (collectively, the "Non-Parties")

Motion to Quash Subpoenas ("Motion") from MTS Bank ("MTS") pursuant to 28

U.S.C. § 1782 and Rule 45(d)(3) of the Federal Rules of Civil Procedure. [D.E. 14].

On July 13, 2017, MTS responded to the Non-Parties' Motion [D.E. 16] to which the

Non-Parties replied on July 20, 2017. [D.E. 17]. Therefore, the Non-Parties' Motion

is now ripe for disposition. After careful consideration of the Motion, response,

reply, relevant authority, and for the reasons discussed below, the Non-Parties'

Motion is **GRANTED in part** and **DENIED in part**.

## I.    BACKGROUND

MTS is a foreign bank registered in the Russian Federation. MTS had prior

business and financial dealings with a private Russian airline company, commonly

referred to as Transaero – a company also registered in the Russian Federation.

Transaero is currently the subject of bankruptcy proceedings pending in Arbitrazh

1

Court, Saint Petersburg, Russia.  MTS is a creditor of Transaero, who was notified of the Russian bankruptcy, filed a claim in bankruptcy, and is a party to those proceedings.

Mr. Pleshakov is the founder and a former CEO of Transaero.  Alongside his spouse Olga Pleshakov and his mother Tatiana Anodina, Mr. Pleshakov has been the majority shareholder of Transaero.  The family also indirectly owned Transaero's shares through various entities, including Sky Stream Corporation, a company registered in the British Virgin Islands.  In 2010, Mr. Pleshakov founded Sky Ocean, a Florida profit corporation.  Sky Ocean was wholly owned by Sky Stream, which in turn was wholly owned by Mr. Pleshakov.

In 2010, Transaero's management approached MTS to open a line of credit for the purpose of expanding commercial operations.  Mr. Pleshakov signed Transaero's financial reports and allegedly made representations of the company's financial stability.  Olga Pleshakov and Alexander Krinichansky negotiated the loans and purportedly assured MTS of the company's solvency and signed the loan agreements on the company's behalf.  MTS then issued the initial line of credit to Transaero in 2010, and subsequent loans were extended each year until its sudden bankruptcy in 2015.  In November 2010, two months after MTS opened its initial line of credit to Transaero, Sky Ocean purchased a multi-million dollar property at 2700 N. Ocean Drive, Unit 702A, Rivera Beach, Palm Beach County, Florida 33404 (the "Rivera Beach property").  The cost of maintaining the Rivera beach property was between $150,000 and $200,000 per year.  At all relevant times, Mr. Pleshakov

was purportedly an officer of Sky Ocean. And Transaero's major shareholder Sky Stream was the parent company and the sole shareholder of Sky Ocean. Sky Stream is wholly owned by Mr. Pleshakov.[1]

At the time of filing the bankruptcy petition, Transero owed MTS over fifty-seven million U.S. dollars and the debt remains unpaid while the bankruptcy case remains pending. Following the bankruptcy application, MTS Bank supposedly conducted a forensic audit of Transaero's accounting records and documents submitted in support of the credit line applications. The audit allegedly revealed widespread falsifications of data and hidden operational losses in Transaero's financials. The funds obtained from creditors were purportedly siphoned out of Transaero through creative financial structures, accounting loopholes, and payments of unlawfully inflated dividends to Transaero's shareholders, including Mr. Pleshakov and Sky Stream.

On April 26, 2017, MTS filed an *ex parte* application to obtain evidence from persons and custodians of records in Florida for use in the Russian bankruptcy court and in a contemplated civil action against Transaero's former directors and shareholders in the British Virgin Islands and/or Russia for debt recovery, securities fraud, civil money laundering, conversion, and other claims. [D.E. 1]. MTS is seeking to obtain documents and to depose Mr. Pleshakov on issues related to irregularities in financial statements, payments of dividends, transfers of funds

---

[1] According to MTS, Sky Stream has allegedly been the sole shareholder of Sky Ocean until January 1, 2016, and Mr. Pleshakov is currently the sole shareholder of Sky Ocean.

received from MTS to personal U.S. based accounts and reinvestment in U.S. businesses. [D.E. 3-2]. The subpoenas in this case specify the areas of questioning and list specific documents that have been requested.

MTS is also seeking to depose a corporate representative of Sky Ocean to explore Sky Ocean's relationship to Transaero's shareholders Mr. Pleshakov and Sky Stream, the corporate structure of the entities affiliated with Transaero, the reinvestment of MTS's funds in the Rivera Beach property, and any unlawful diversion of MTS's funds from a legitimate aviation company's activities to U.S. based personal bank accounts, businesses, and Florida real estate. MTS expects the discovery to supplement Transaero's financial records and reveal that Sky Ocean was used as a vehicle for reinvestment of illegally gotten funds.

Additional subpoenas have been issued to Bank of America, Chase Bank, Citibank, TD Bank, and Wells Fargo Bank (the "Florida Banks") named in the application seeking banking records that are expected to reflect monetary flows to U.S. based personal and business accounts of the Pleshakovs. The documents are allegedly necessary to trace the disposition of MTS's funds because the Pleshakovs purportedly signed Transaero's fraudulent accounting reports, loan applications, and received funds from Transaero in the form of inflated dividends.

On June 6, 2017, the Court entered an Order granting the *ex parte* application and permitted MTS to conduct discovery. On June 8, 2017 and June 10, 2017, the Non-Parties were served at Sky Ocean's registered address. Sky Ocean's representative, Marina Katz, accepted the subpoenas. The Non-Parties' counsel

purportedly confirmed the receipt of the subpoenas when he requested an extension for filing a motion to quash. On June 19, 2017, MTS served Bank of America, Chase Bank, TD Bank, and Wells Fargo Bank. MTS served Citibank on June 28, 2017. On June 24, 2017, Bank of America informed Sky Ocean that it intends to produce Sky Ocean's records pursuant to the subpoena. Sky Ocean responded by Serving Bank of America with its motion to quash and the bank stayed the production pending the resolution of the Motion.

## II.   ANALYSIS

The gist of the Non-Parties' Motion is that the subpoenas should be quashed because (1) Mr. Pleshakov neither resides nor can be found in the District as required by 28 U.S.C. § 1782, (2) the discretionary factors set forth in *Intel* weigh in favor of the Non-Parties and the Florida Banks, (3) MTS failed to properly serve Mr. Pleshakov, and (4) the subpoena directed to Mr. Pleshakov violates the geographical limitations of Rule 45(c).

### A.   *The Statutory Requirements of Section 1782*

The first issue in the Non-Parties' Motion is that the subpoenas should be quashed for failing to comply with the statutory requirements of 28 U.S.C. § 1782. The purpose of § 1782 is "to provide federal-court assistance in gathering evidence for use in foreign tribunals." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247 (2004); *see also In the Matter of Lancaster Factoring Co., Limited,* 90 F.3d 38, 41 (2d Cir. 1996) (finding that the purposes of § 1782 are "equitable and efficacious procedures in United States courts for the benefit of tribunals and

litigants involved in foreign litigation" and "to encourag[e] foreign countries by example to provide similar assistance to our courts.") (internal citations omitted). The statute "is the product of congressional efforts, over the span of nearly 150 years, to provide federal-court assistance in gathering evidence for use in foreign tribunals." *Id.* at 248.

Pursuant to section 1782, a United States District Court, upon the application of an interested person, may order a person residing or found in the district to give testimony or produce documents for use in a foreign proceeding:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court. By virtue of his appointment, the person appointed has power to administer any necessary oath and take the testimony or statement. The order may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement or producing the document or other thing. To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

28 U.S.C. § 1782.

As an initial matter, a district court must first determine whether there is a statutory basis for the § 1782 application. The Eleventh Circuit has found that there are four statutory requirements that must be considered in making that determination:

6

A district court has the authority to grant an application for judicial assistance if the following statutory requirements in § 1782(a) are met: (1) the request must be made 'by a foreign or international tribunal,' or by 'any interested person'; (2) the request must seek evidence, whether it be the 'testimony or statement' of a person or the production of 'a document or other thing'; (3) the evidence must be 'for use in a proceeding in a foreign or international tribunal'; and (4) the person from whom discovery is sought must reside or be found in the district of the district court ruling on the application for assistance. 28 U.S.C. § 1782(a).

*In re Clerici*, 481 F.3d 1324, 1331–32 (11th Cir. 2007). If the statutory requirements are met, district courts must always determine whether the requested discovery complies with the Federal Rules. "For example, if the subpoena at issue is directed to a party that resides or is found in the district, same must comply with Fed. R. Civ. P. 45." *In re Chevron Corp.*, 2012 WL 3636925, at *6 (S.D. Fla. June 12, 2012) (citing *In re Application of Inversiones v. Gasolinera Petroleos Vanezuela, S. De R.L.,* 2011 WL 181311, at * 6 (S.D. Fla. Jan. 9, 2011)). Assuming that all of the above requirements are met, section 1782 "authorizes, but *does not require*, a federal district court to provide judicial assistance to foreign or international tribunals or to 'interested person[s]' in proceedings abroad." *Intel Corp.*, 542 U.S. at 247 (emphasis added); *see also United Kingdom v. United States*, 238 F.3d 1312, 1319 (11th Cir. 2001) ("[A] district court's compliance with a § 1782 request is not mandatory").

In addition to the statutory requirements, district courts must also consider several discretionary factors articulated by the Supreme Court in *Intel*, including: (1) whether the respondents are parties in a foreign proceeding, (2) the nature of the foreign tribunal, the character of the proceedings abroad, and the receptivity of the

foreign tribunal to assistance from a U.S. federal court, (3) whether the discovery application conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States, and (4) whether the request is intrusive or burdensome. *See Intel Corp.*, 542 U.S. at 264-65. Ultimately, district courts must exercise their discretion to achieve the two aims of section 1782, which are to "provid[e] efficient means of assistance to participants in international litigation and [to] encourage[e] foreign countries by example to provide similar means of assistance to our courts." *In re Metallgesellschaft,* 121 F.3d 77, 79 (2d Cir. 1997).

The Non-Parties argue that the final statutory requirement set forth in 28 U.S.C. § 1782(a) is not met in this action because Mr. Pleshakov resides in Azerbaijan and the European Union. In other words, Mr. Pleshakov allegedly does not "reside" nor can he be "found" in this district as required under the statute. Mr. Pleshakov claims that he is not a citizen or a permanent resident of the United States, nor does he have an entry visa that might authorize him to enter and/or remain in the United States. He also suggests that he does not reside anywhere in the United States and that he has not been to the United States for at least three years. As such, the Court purportedly lacks subject matter jurisdiction over Mr. Pleshakov:

> [F]or purposes of Gazprom's § 1782(a) application for assistance, the evidence shows that at the time of Gazprom's application filing, Pivert did not and still does not reside in this Court's jurisdiction, nor did he, nor does he, have any intention of any lengthy, no less permanent residence here. As indicated *supra*, the evidence shows that Pivert cannot now be found nor at any reasonable time in the future is it

likely he would be found in this district within the meaning of § 1782. Therefore the Court lacks subject matter jurisdiction over Pivert and must deny Gazprom's application.

*In re: Application of Gazprom Latin Am. Servicios, C.A.*, 2016 WL 3654590, at *12 (S.D. Tex. July 6, 2016).

In response, MTS argues that Mr. Pleshakov can be found in Florida for several reasons. First, Mr. Pleshakov is the sole owner of a Florida corporation, Sky Ocean. Second, Mr. Pleshakov purportedly maintains a corporate address, has a corporate registered agent for service of process for Sky Ocean, and received the relevant subpoenas through his agent. Third, MTS contends that Mr. Pleshakov maintains at least one business bank account for Sky Ocean. Fourth, Mr. Pleshakov supposedly serves as an officer of Sky Ocean and lists himself on each annual report. And fifth, Mr. Pleshakov has allegedly litigated in Florida state courts and owns real estate in Florida. For all of the aforementioned reasons, MTS suggests that it is clear that Mr. Pleshakov can be "found" in Florida within the meaning of section 1782.

As an initial matter, the first statutory requirement under section 1782 is easily met because MTS is undeniably a party in an ongoing Russian bankruptcy proceeding and will be a plaintiff in a contemplated debt recovery/civil fraud action. The second requirement is also met because MTS seeks testimony and documentary evidence as listed in the subpoenas. Third, the evidence is sought for the use in a Russian bankruptcy court, which is obviously a foreign tribunal within the statutory definition of § 1782. *See, e.g.*, *In re: Application of Joint Stock Co.*

9

*Raiffeinsenbank*, 2016 WL 6474224, at *3 (N.D. Cal. Nov. 2, 2016) ("'[T]he discovery is for use in a proceeding before a foreign tribunal' because RFB seeks to use the discovery gained from Zubarev in the Russian Proceedings before the Arbitrazh Courts in Russia."). Therefore, MTS has met the first three statutory requirements.

Yet, the parties strongly disagree as to whether the final statutory requirement – whether Mr. Pleshakov "resides" or can be "found" in this district – has been satisfied.[2] As support for its position, MTS relies on the decision in *In re Application of Inversiones y Gasolinera Petroleos Vanezuela, S. de R.L.*, 2011 WL 181311, at *8. In that case, the respondent, Exxon, argued that in the context of an action brought under section 1782, it could not be "found" in the district because its corporate headquarters were not located in Florida. Judge Simonton disagreed and held that that the statutory language of being "found" under section 1782 is almost the equivalent of being found in the jurisdiction for the purpose of personal jurisdiction. *See id.* ("[I]n the case at bar, since it is undisputed that Exxon is subject to personal jurisdiction in this District by virtue of its continuous and systematic activities, the undersigned concludes that Exxon is "found" here within the meaning of section 1782."). In reaching that holding, Judge Simonton relied on the Second Circuit's decision in *In re Application of Edelman,* 295 F.3d 171 (2d Cir. 2002).

In *Edelman*, the Second Circuit recognized that the statutory language of being "found" must be liberally interpreted and is satisfied when a non-party person

---

[2] There is no dispute between the parties that the Florida banks can be "found" in this district.

travels to the United States and is served with a subpoena for a deposition. The Second Circuit explained that "if so-called tag jurisdiction was sufficient to subject a person to liability, it was sufficient to subject a potential witness to discovery proceedings." 2011 WL 181311, at *8 (citing *Edelman,* 295 F.3d at 179-80; *In re Application of Yukos Hydrocarbons Invs. Ltd.,* 2009 WL 5216951 (N.D.N.Y. Dec. 30, 2009); Hans Smit, *American Assistance to Litigation in Foreign and International Tribunals: Section 1782 of Title 28 of the U.S.C. Revisited,* 25 Syracuse J. Int'l. L. & Com. 1, 10 (1998) ("The evident statutory purpose [of section 1782] is to create adjudicatory authority based on presence.")).

MTS argues that the same reasoning can be applied in this case. Mr. Pleshakov is supposedly subject to the Court's jurisdiction based on his business activities, financial transactions, and most importantly his ownership of real property in the district. Specifically, MTS relies on Florida Statute section 48.193 that provides jurisdiction to Florida courts for individuals that own any real property in the state:

> (1)(a) A person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from any of the following acts:
> . . .
> 3. Owning, using, possessing, or holding a mortgage or other lien on *any real property* within this state.

Fla. Stat. § 48.193 (emphasis added). The fact that Mr. Pleshakov owns property in the state of Florida is allegedly sufficient by itself to satisfy the section 1782

jurisdictional requirement of being "found" in this district. When coupled with the fact that he (1) maintains a corporate address with a corporate agent, (2) retains a Florida bank account, (3) and litigates in Florida state courts, MTS believes that is clear that Mr. Pleshakov can be "found" in Florida within the meaning of section 1782.

Yet, we disagree with MTS that the final statutory requirement in section 1782 has been met with respect to Mr. Pleshakov. MTS is certainly correct that the question of what it means to "reside" or be "found" in a locale has been broadly interpreted based on common sense understandings of the words, and relevant case law on territorial jurisdiction.[3] And it is also evident that the relationship between section 1782 and the contours of personal jurisdiction are *not* the same. While the Second Circuit and Judge Simonton have previously held that a person may be "found" for the purpose of section 1782 when he or she is served in a manner consistent with conferring personal jurisdiction, this does not necessarily equate the two doctrines. Those decisions merely "stated that a person is 'found' in a jurisdiction for purposes of § 1782(a) if he is personally served while physically present in the jurisdiction." *In re Godfrey*, 526 F. Supp. 2d 417, 421 (S.D.N.Y. 2007) (citing *Edelman*, 295 F.3d at 179). "This does not indicate an intention to make the availability of discovery under § 1782 subject to the vagaries of individual states'

---

[3]     For example, in *Burnham v. Superior Court of California,* 495 U.S. 604 (1990), the Supreme Court authorized the exercise of personal jurisdiction based on nothing more than physical presence. *See also Kadic v. Karadzic,* 70 F.3d 232, 246–47 (2d Cir. 1995) (upholding the Southern District's exercise of personal jurisdiction over foreign national served with summons while physically present in the Southern District).

rules of service of process and personal jurisdiction. On the contrary, it merely represents a common sense holding that one who is personally served with process while present in a district is 'found' in that district for the purpose of foreign discovery applications." *In re Godfrey*, 526 F. Supp. 2d at 421; *see also In re Application of Thai-Lao Lignite (Thailand) Co., Ltd.*, 821 F. Supp. 2d 289, 295 (D.D.C. 2011) ("Courts considering whether to grant a petition for assistance pursuant to 28 U.S.C. § 1782 have analyzed their authority by referencing the language in section 1782—whether it is a district 'in which a person resides or is found'—rather than discussing whether the Court has subject matter and personal jurisdiction over the entity or person from whom discovery is sought.").

The evidence that MTS relies upon does not establish in any way that Mr. Pleshakov "resides" or can be "found" in this district. All of the evidence proffered in connection with Mr. Pleshakov relates solely to Sky Ocean. For example, MTS alleges that Mr. Pleshakov maintains a corporate address, has a corporate registered agent, maintains at least one business bank account, has litigated in Florida state court, owns real estate in Florida, and was personally served with the subpoena. Yet, the Brown Declaration and the related exhibits that supposedly evidence these claims instead show that only Sky Ocean – *not* Mr. Pleshakov – has engaged in all the aforementioned activity. As such, MTS has no evidence to establish that Mr. Pleshakov meets the final statutory requirement under section 1782. To this extent, the Non-Parties' Motion, as it relates to Mr. Pleshakov, must be **GRANTED**.

Alternatively, MTS requested in its response that in the event the Court found that the evidence proffered was insufficient to satisfy the jurisdictional requirement of section 1782 that it be allowed to take limited discovery in order to establish facts related to Mr. Pleshakov's residence and activities in Florida. It is well established that "[a] qualified right to conduct jurisdictional discovery is recognized in the Eleventh Circuit." *Bernardele v. Bonorino*, 608 F. Supp. 2d 1313, 1321 (S.D. Fla. 2009) (citing *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351 n.13 (1978) ("Where issues arise as to jurisdiction or venue, discovery is available to ascertain facts bearing on such issues."); *Eaton v. Dorchester Development, Inc.,* 692 F.2d 727, 729 (11th Cir. 1982) ("[J]urisdictional discovery is not entirely discretionary ... a court does not have discretion to grant or deny a request for jurisdictional discovery [when jurisdictional facts are in dispute].")).

Because the Eleventh Circuit favors limited discovery where there is a genuine dispute concerning jurisdiction, we agree that MTS should be at least afforded a chance to establish sufficient facts that establish that Mr. Pleshakov "resides" or can be "found" in this district. *See Majd–Pour v. Georgiana Community Hosp., Inc.,* 724 F.2d 901, 903 (11th Cir. 1984) ("Although the plaintiff bears the burden of proving the court's jurisdiction, the plaintiff should be given the opportunity to discover facts that would support his allegations of jurisdiction").

Next, we turn our attention to the issue of whether the four statutory requirements have met under section 1782 with respect to Sky Ocean and the Florida Banks. As stated earlier, MTS seeks to depose a corporate representative of

Sky Ocean to explore Sky Ocean's relationship to Transaero's shareholders Mr. Pleshakov and Sky Stream, the corporate structure of the entities affiliated with Transaero, the reinvestment of MTS's funds in the Rivera Beach property, and any unlawful diversion of MTS's funds from a legitimate aviation company's activities to U.S. based personal bank accounts, businesses, and Florida real estate. MTS expects the discovery to supplement Transaero's financial records and reveal that Sky Ocean was used as a vehicle for reinvestment of illegally gotten funds.

The Florida Banks did not file any objections to the subpoenas. The only objection that Sky Ocean makes is that the Court should consider the *Intel* discretionary factors, claiming that at least three of the factors weigh in favor of Sky Ocean because (1) Sky Ocean is not a participant to the Russian bankruptcy proceedings, the subpoenas circumvent Russian law, and (3) the subpoenas are overly broad and unduly intrusive.

Although neither Sky Ocean nor the Florida Banks challenge the subpoenas on the basis that they fail to meet the statutory requirement of section 1782, we will still determine whether there is a proper basis to enforce the subpoenas under the statute. Sky Ocean is a single-purpose entity that was formed on or about December 27, 2010 to purchase and take title to certain residential real property located in Palm Beach County, Florida. On July 29, 2014, a former officer of Sky Ocean caused the property to be sold and nearly all of the proceeds from that sale, constituting nearly all of the company's initial capital to be wired to an offshore account in the name of a third party.

Without rehashing all of the four requirements under section 1782, we find that, unlike Mr. Pleshakov, all of the statutory requirements have been met in connection with Sky Ocean and the Florida Banks. The only statutory specific requirement is whether the person from whom discovery is sought "resides" or can be "found" in this district. Here, there is no doubt that the Florida Banks meet this requirement. The banks are based in Florida, conduct substantial financial transactions in the state, and were personally served with the relevant subpoenas. As such, we need not delve into any additional discussion on whether the Florida Banks fall under section 1782.

As for Sky Ocean, the Non-Parties appear to suggest at one point in their reply brief that the entity does not "reside" or can be "found" within the district because its property was sold in July 2014. Yet, based on the unrebutted evidence presented, Sky Ocean (1) maintains a corporate address with a corporate agent, (2) retains a Florida bank account, (3) and litigates in Florida state courts. Furthermore, Sky Ocean was personally served with a subpoena in this action, which – as discussed above – is enough to confer jurisdiction over the entity under section 1782. *See, e.g.*, *Edelman*, 295 F.3d at 179. When coupled together, there is no doubt that Sky Ocean is subject to personal jurisdiction in this district by virtue of its continuous and systematic activities. *See In re Application of Inversiones y Gasolinera Petroleos Vanezuela, S. de R.L.*, 2011 WL 181311, at *8. Therefore, we find that all four statutory requirements under section 1782 have been met in connection with Sky Ocean and the Florida Banks.

**B.** _**Intel's Discretionary Factors**_

Once the statutory requirements of § 1782 have been met, district courts must also consider the four discretionary factors set forth in _Intel_, including: (1) whether the respondents are parties in a foreign proceeding because "the need for § 1782(a) generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant," (2) the nature of the foreign tribunal, the character of the proceedings abroad, and the receptivity of the foreign tribunal to assistance from a U.S. federal court, (3) whether the discovery application conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States, and (4) whether the request is intrusive or unduly burdensome. _Intel Corp._, 542 U.S. at 264-65. While the four factors are commonly discussed on an individual basis, they "are not stand-alone categorical imperatives" but rather "involve overlapping considerations, [which] are considered collectively by the court." _In Matter of Appl. of Action & Protection Found. Daniel Bodnar_, 2014 WL 2795832, *5 (N.D. Cal. June 19, 2014) (quotation omitted).

**C.** _**The First Factor: Parties in a Foreign Proceeding**_

The Non-Parties argue that the first _Intel_ factor weighs in their favor because Sky Ocean has never been a participant in the Russian bankruptcy proceedings and has never received any dividends or income from Transaero. The Non-Parties also contend that neither Sky Ocean nor its officers were parties or guarantors of the loans at issue. In response, MTS suggests that the Non-Parties are confused on the law in claiming that they are not participants to the Russian bankruptcy and that

this somehow benefits them. To the contrary, MTS believes that being a non-participant weighs in its favor because it suggests that Sky Ocean and the Florida Banks are non-parties and outside of the jurisdictional reach of the foreign tribunal.

It is well established that "[t]he need for § 1782 assistance is more apparent when discovery is sought from a non-participant." *In re Sergeeva*, 2013 WL 12169388, at *10 (N.D. Ga. Nov. 22, 2013); *see also In re Clerici*, 481 F.3d at 1335 ("In many § 1782 cases, the person from whom discovery is sought is a nonparticipant in the foreign proceeding and outside the jurisdiction of the foreign tribunal.") (citing *United Kingdom v. United States*, 238 F.3d 1312, 1314 (11th Cir. 2001) (seeking sensitive law enforcement documents possessed by the United States to be used in a criminal prosecution in England); *Lo Ka Chun v. Lo To*, 858 F.2d 1564, 1565 (11th Cir. 1988) (seeking the issuance of subpoenas duces tecum to residents of the United States who were non-party witnesses in an action pending in Hong Kong); *In re Request for Assistance from Ministry of Legal Affairs of Trinidad & Tobago*, 848 F.2d 1151, 1152 (11th Cir. 1988) (seeking authenticated copies of bank records from non-party bank)).

We agree with MTS that the first *Intel* factor favors the use of section 1782 because the Florida banks and Sky Ocean – by the Non-Parties' own admission – are nonparticipants in the Russian bankruptcy proceedings. If Sky Ocean or the Florida banks were part of the foreign proceedings, it may have been an indicator that we should be less inclined to grant the discovery request because both would have already been subject to the jurisdiction of the foreign tribunal. Because there

is no dispute that Sky Ocean or the Florida banks are non-participants in the Russian bankruptcy proceedings, we will proceed to the second, third, and fourth *Intel* factors to determine if they also weigh in favor of MTS. *See In re Roz Trading Ltd.*, 2007 WL 120844, at *2 (N.D. Ga. Jan. 11, 2007) ("Respondent is not a party to the arbitration, and on this ground alone the first *Intel* factor is satisfied.").

### D.   *The Second Factor: Receptivity of the Foreign Tribunal*

The second *Intel* factor examines whether the foreign tribunal "is willing to consider the information sought." *Siemens AG v. W. Digital Corp.*, 2013 WL 5947973, *3 (C.D. Cal. Nov. 4, 2013). Another nation's limit on discovery "within its domain for reasons peculiar to its own legal practices, culture, or traditions . . . do[es] not necessarily signal objection to aid from United States federal courts." *Intel*, 542 U.S. at 261 (citing *In re Bayer AG*, 146 F.3d 188, 194 (3d Cir. 1998) ("[T]here is no reason to assume that because a country has not adopted a particular discovery procedure, it would take offense at its use.")).

Instead, courts look for "authoritative proof that a foreign tribunal would *reject* evidence obtained with the aid of § 1782." *In re Kreke Immobilien KG*, 2013 WL 5966916, at *5 (S.D.N.Y. Nov. 8, 2013) (quoting *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1100 (2d Cir. 1995)). "Such proof, as embodied in a forum country's judicial, executive, or legislative declarations that specifically address the use of evidence gathered under foreign procedures . . . provide helpful and appropriate guidance to a district court in the exercise of its discretion." *Euromepa*, 51 F.3d at 1100 (footnotes omitted); *Schmitz v. Bernstein Liebhard & Lifshitz, LLP.*,

376 F.3d 79, 84 (2d Cir. 2004) (denying discovery because "the German government was obviously unreceptive to the judicial assistance of an American federal court" since it requested the court to deny petitioner's § 1782 application); *In re Ex Parte Application of Qualcomm Inc.*, 162 F. Supp. 3d 1029, 1040 (N.D. Cal. 2016) (finding that the second *Intel* factor weighed in favor of respondents because the Korean Fair Trade Commission's amicus brief asked the court to deny petitioner's applications and that it had no need or use for the requested discovery). "Absent this type of clear directive, however, a district court's ruling should be informed by section 1782's overarching interest in 'providing equitable and efficacious procedures for the benefit of tribunals and litigants involved in litigation and international aspects.'" *Euromepa*, 51 F.3d at 1100 (citation omitted).

As support for his position that the discovery sought is wholly improper under Russian law and its corresponding discovery practices, the Non-Parties rely on the declaration of Igor Sergeevich Udalischev. Mr. Udalischev is a citizen of the Russian Federation and a duly licensed lawyer who practices and has expertise in handling and litigating Russian court proceedings, including permissible proof-gathering and discovery practices. According to Mr. Udalischev, per Russian law and procedures, once a corporate debtor is placed into bankruptcy proceedings, it is allegedly the Russian court's function to determine and establish whether the entity is, in fact, bankrupt. Until such a determination is made, creditors in Russian bankruptcy proceedings purportedly have no right to file, litigate, or pursue claims against, nor seek independent discovery of any kind from a debtor.

During the pendency of Russian bankruptcy proceedings, Mr. Udalischev claims that the pursuit and satisfaction of a creditor's claims remain limited. Creditors in bankruptcy proceedings are supposedly permitted to exercise their rights to pursue and satisfy their claims only by either direct involvement or participation at a meeting of creditors or indirectly through an elected council of creditors. However, no matter how a creditor proceeds, a creditor purportedly has no right to perform or undertake any action whatsoever aimed at establishing, preserving, saving, or investigating/tracing a debtor's property or assets, as those functions are reserved and performed solely by the Russian bankruptcy trustee.

Furthermore, the Non-Parties argue that Russian bankruptcy creditors lack the ability, power, or right to pursue any discovery whatsoever directly from a corporate debtor under any circumstances. A creditor's inability to seek discovery allegedly extends to a corporate debtor's former executives, directors, employees, managers, and shareholders. Hence, the Non-Parties contend that it is impermissible and inappropriate for Russian bankruptcy creditors to seek discovery of any kind directly from corporate debtors, including former executives, employees, or management body members or shareholders. Bankruptcy creditors are also supposedly not permitted to initiate any judicial proceeding or action of any kind to attempt to discovery or obtain any financial property holdings, or any other economic information of any kind about a corporate debtor from the debtor itself nor

any other independent source.[4]  Given the extensive limitations under Russian law, the Non-Parties suggest that the subpoenas must be quashed.

MTS strongly disputes the legal reasoning and conclusions found in the Non-Parties' Motion.  MTS relies on the declaration of Denis Vetrov – a qualified jurist practicing law in Russia.  Mr. Vetrov concludes in his declaration that Russian courts are absolutely receptive to discovery obtained in foreign jurisdictions and that several provisions under Russian law explicitly support this position.  For example, Article 66(a) of the Russian Code provides that "[e]vidence shall be presented by the persons participating in a case.  Copies of the documents submitted to court by a person participating in a case shall be directed to other persons participating in the case if they do not have these documents."  [D.E. 15].

MTS also relies on Article 75 that provides that "[a] document obtained in a foreign state shall be recognized by an arbitration court as written evidence if it is legalized in the established procedure."  [D.E.15]; *see also* Article 255 ("Documents, issued, compiled or certified in accordance with the stablished form by the competent bodes of foreign states out of the boundaries of the Russian Federation in conformity with the norms of foreign law with respect to Russian organizations and citizens, or to foreign persons, *shall be accepted by arbitration courts in the Russian Federation*, if said documents are legalized, or if an apostille is placed on them, unless otherwise is established by an international treaty of the Russian

---

[4]     These limitations also allegedly extend to a Russian bankruptcy trustee who cannot request any information regarding the activities or financial information of a corporate debtor from the corporation's former executives, employees, or management body members nor from its individual shareholders.

Federation.") (emphasis added). Because several sections of Russian law allow for the use of foreign discovery, MTS suggests that the third *Intel* factor clearly weighs in its favor.

After a complete review of the expert declarations, the arguments presented, and the authority cited therein, we agree that the Non-Parties' arguments are unpersuasive. First, the Non-Parties rely on the declaration of Mr. Udalischev for the proposition that Russian law bars outside discovery, yet the Non-Parties fail to cite a *single* Russian provision that supports that conclusion. At one point, Mr. Udalischev paraphrases Article 66 of the Russian Code in support of the position that under no circumstances are creditors permitted to request information from any individuals. Mr. Udalischev states in his declaration that "per clause 2, Article 66 of the Law, a Russian bankruptcy trustee does not have the right, ability, nor power to request any information regarding the activities or financial of a corporate debtor from the corporation's former executives, employees, or management body members nor from its individual shareholders." [D.E. 11-6]. Yet, Article 66 simply lists the powers of an interim receiver during the bankruptcy stages. None of the language in Article 66 – especially in clause 2 – prohibits creditors or a trustee from seeking discovery from third parties:

> 1. The interim receiver shall be entitled to: lodge a demand with a court of arbitration in his/her name for declaring as null and void the deals and decisions, and also a demand for the application of consequences of the invalidity of the null and void deals concluded or accomplished by the debtor in breach of the provisions of Articles 63 and of the present Federal Law; lodge objections to creditors' claims in the cases specified by the present Federal Law; attend arbitration court hearings dedicated to verification of the availability of a good

ground for the debtor's lodged objections to creditors' claims; file a petition with a court of arbitration for the taking of additional measures for preserving the debtor's property, in particular, for an injunction on the accomplishment of deals without the consent of the interim receiver as envisaged by Item 2 of Article 64 of the present Federal Law; file a petition with a court of arbitration for removal of the head of the debtor; obtain any information and documents concerning the debtor's activity; exercise the other powers established by the present Federal Law.

2. The debtor's managerial bodies shall provide the interim receiver on his/her request with all information concerning the debtor's activity. Information on the debtor and the property thereof, including without limitation, property rights and on liabilities that has been requested by the interim receiver from natural persons, legal entities, state bodies and local self-government bodies shall be provided by said persons/entities and bodies to the interim receiver within seven days after the receipt of the qualified receiver's request on a free-of-charge basis.

[D.E. 15-6].

Second, Mr. Udalischev claims that Russian law precludes creditors from seeking discovery relating to a debtor's affairs, including a debtor's former shareholders and managers and that creditors may not initiate a judicial action to obtain this discovery. However, Mr. Udalischev never cites any language from the Russian Code that supports that conclusion. This is simply another example of where Mr. Udalischev makes a conclusory argument that Russian law prohibits outside discovery, yet remains unsupported by any specific authority.

A final indicator that the Non-Parties' arguments miss the mark is the fact that several courts, in recent years, have allowed for discovery in section 1782 cases to proceed for the use in Russian courts:

There is no indication, let alone any authoritative proof, that the Russian court would reject as evidence any documents gathered with the aid of the witnesses' deposition testimony, nor that it would reject

such testimony if offered in support of a request by Imanagement for a Russian court order for the production of particular documents or other evidence. The Court therefore cannot say that the Russian court's statement constitutes authoritative proof that the Russian court would reject evidence gathered with the assistance of discovery under § 1782, or that the refusal to admit the deposition transcripts as testimonial evidence signals a 'lack of receptivity' to 'U.S. federal-court judicial assistance' such that the Court should use its discretion to deny Imanagement's request for discovery.

*In re Imanagement Servs., Ltd.*, 2005 WL 1959702, at *4 (E.D.N.Y. Aug. 16, 2005) (citing *Intel Corp.*, at 264); *see also In re: Application of Joint Stock Co. Raiffeinsenbank*, 2016 WL 6474224, at *5 ("The Court is unaware of any authoritative source suggesting the Arbitrazh Courts would be unreceptive to the discovery RFB seeks."); *In re Kolomoisky*, 2006 WL 2404332, at *2 (S.D.N.Y. Aug. 18, 2006) (finding no evidence that the Russian government or the court where the Moscow Action occurred opposes Petitioner's discovery request).

When coupling the lack of support in Mr. Udalischev's declaration with the lack of authoritative evidence that Russian courts are not receptive to American judicial assistance, we agree with MTS that "Russia may actually be receptive to such discovery," and that the second *Intel* factor weighs in favor of MTS. *In re: Application of Joint Stock Co. Raiffeinsenbank*, 2016 WL 6474224, at *5; *see also In re Kreke Immobilien KG*, 2013 WL 5966916, at *1 ("In the absence of authoritative proof that a foreign tribunal would reject evidence obtained with the aid of section 1782, a district court should err on the side of permitting discovery." (citations and internal quotation marks omitted)).

To the extent there are any remaining doubts (and we believe there are none) as to whether the Russian tribunal would consider the evidence sought, a suspicion that the evidence gathered would ultimately be rejected is not enough to overcome the presumption that district courts should allow for discovery to proceed under section 1782 to promote the statute's goals of efficiency and comity. *See Euromepa,* 51 F.3d at 1100; *In re Kreke Immobilien KG*, 2013 WL 5966916, at *5 (S.D.N.Y. Nov. 8, 2013) ("Rather than deny a § 1782 request because it suspects that the evidence gathered would ultimately be rejected by the foreign tribunal, a U.S. district court should presumptively allow discovery to the extent that such a grant would promote the statute's goals of efficiency and comity.") (citation omitted).

### E.    *The Third Factor: Foreign Proof-Gathering Restrictions*

The third *Intel* factor asks whether the § 1782 request "attempt[s] to circumvent foreign proof-gathering limits or other policies of a foreign country or the United States." *Intel*, 432 U.S. at 264-265. "Although courts need not determine if an applicant has exhausted its discovery attempts abroad, 'a perception that an applicant has 'side-stepped' less-than-favorable discovery rules by resorting immediately to § 1782 can be a factor in a court's analysis.'" *In re: Application of Joint Stock Co. Raiffeinsenbank*, 2016 WL 6474224, at *6 (quoting *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2013 WL 183944, at *3 (N.D. Cal. Jan. 17, 2013)). "Put differently, the § 1782 applicant's conduct in the foreign forum is not irrelevant." *In re Appl. of Gilead Pharmasset LLC*, 2015 WL 1903957, at *4 (D. Del. Apr. 14, 2015) (quoting *In re IPC Do Nordeste, LTDA*, 2012 WL 4448886, *9

(E.D. Mich. Sept. 25, 2012)). "This is not the same as a foreign discoverability requirement; the fact that a § 1782 application requests documents that would not be discoverable by the foreign court if those documents were located in the foreign jurisdiction is not enough to render the application a 'circumvention' of foreign rules. However, this factor suggests that a district court should be vigilant against a petitioner's attempt to 'replace a [foreign] decision with one by [a U.S.] court.'" *In re Kreke Immobilien KG*, 2013 WL 5966916, at *6 (S.D.N.Y. Nov. 8, 2013) (citations omitted).

Similar to the second *Intel* factor, the Non-Parties rely on the declaration of Mr. Udalischev to argue that the discovery request from MTS is an improper attempt to undermine Russian policies and procedures that restrict discovery in this type of action. Yet, we agree with MTS that the Court has no reason to believe that there are policies or laws in Russia or the United States that preclude the discovery sought. The Non-Parties only make conclusory arguments that the discovery sought is barred by Russian law, but never point to any specific authority to support those contentions. By contrast, MTS refers to several authorities that suggest that U.S. courts have found Russian bankruptcies to fall within the scope of § 1782. *See, e.g.*, *Lancaster Factoring Co. v. Mangone*, 90 F.3d 38, 42 (2d Cir. 1996) ("A bankruptcy proceeding, by its nature, is one in which the value of the debtor's estate is adjudicated. Such a proceeding is within the intended scope of § 1782.").

More importantly, we are unaware of any restrictions imposed by Russian courts in proof-gathering procedures that would prohibit MTS from obtaining and

introducing the discovery sought via section 1782. There also is no evidence to suggest that MTS has received an adverse decision from a Russian tribunal regarding prior discovery requests or is seeking relief under section 1782 as an attempt to sidestep Russian policies and procedures. Accordingly, we find that the third *Intel* factor favors MTS.

**F.**     ***The Fourth Factor: Overbroad and Unduly Burdensome***

The Non-Parties' final argument in support of their Motion is that the subpoenas are (1) overbroad and impose an undue burden on the Florida banks, and (2) violate the due process and privacy rights of Sky Ocean. To be clear, a district court may consider whether an application contains "unduly intrusive or burdensome requests," *Intel Corp.,* 542 U.S. at 265, is "made in bad faith, for the purpose of harassment," *Euromepa S.A.,* 51 F.3d at1101 n. 6, or is part of a "fishing expedition," *In re Request for Assistance from Ministry of Legal Affairs of Trinidad and Tobago,* 848 F.2d 1151, 1156 (11th Cir. 1988), *abrogated on a different ground by Intel Corp.,* 542 U.S. at 259.

The Non-Parties suggest that the subpoenas seek documents that are not probative of the claims *currently* pending and that the documents may be obtained from other sources, including Transaero and its banking institutions. The Non-Parties further contend that the subpoenas improperly seek broad-based business and personal financial documents over a seven-year period and are not properly limited in time. Thus, the subpoenas, as they stand now, purportedly equate to

nothing less than a wide net designed to impose an undue burden on the Florida Banks and Sky Ocean.

Furthermore, the Non-Parties argue that MTS seeks subpoenas for use in the Russian bankruptcy and/or "contemplated proceedings" in other jurisdictions. Yet, the discovery applied for and permitted in this case is supposedly overbroad and seeks materials strictly personal, private, and confidential in nature. In other words, the Non-Parties suggest that the documents sought have nothing to do with Transaero – the party allegedly indebted to MTS – nor the Russian bankruptcy. The Non-Parties also argue that there has been no showing as to how the requested discovery will be used or otherwise assist MTS in the Russian bankruptcy, which is the only pending proceeding at this time. Because the discovery sought attempts to use sensitive and private information to engage in a fishing expedition for other "contemplated proceedings", the Non-Parties believe that the subpoenas should be quashed accordingly.

In response, MTS contends that, as a creditor in the Russian bankruptcy case and as a future plaintiff in a contemplated action for fraud, the subpoenas seek relevant information concerning the disposition of its funds and information on any transfer of illegally gotten funds through Florida based accounts. As such, MTS compares its document requests to similar ones that courts have found acceptable in other foreign bankruptcy proceedings. *See, e.g.*, *In re Application of Setraco Nigeria Ltd.*, 2013 WL 3153902, at *4 (M.D. Fla. June 19, 2013); *In re Application of Hill*, 2005 WL 1330769, at *5 (S.D.N.Y. June 3, 2005). MTS also argues that the

discovery sought is limited to the time period beginning on November 12, 2010 – the date of the initial loan by MTS to Transaero. MTS further explains that a debt is still outstanding and that transfers may have occurred well after 2010. Therefore, MTS believes that it is appropriate to seek records from November 12, 2010 to the present.

As for the Non-Parties arguments concerning whether the subpoenas are unduly burdensome, MTS argues that abstract assertions of burden, privacy, or intrusiveness do not suffice under Eleventh Circuit precedent. *See, e.g.*, *Application of Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc.*, 747 F.3d 1262, 1273 (11th Cir. 2014) (finding that the respondent "failed to identify which particular discovery requests . . . are unduly burdensome or to provide any specific evidence to support its blanket claim that [the respondent] should be exempted from having to comply with any and all discovery obligations due to overarching concerns about confidentiality that are stated only at the highest order of abstraction."). MTS contends that the Non-Parties have merely proffered unsupported legal conclusions that the subpoenas are unduly burdensome without substantiating that position with any evidence or sworn affidavits. Because the Non-Parties' position is allegedly untenable, MTS believes that all of their arguments lack merit.

After full consideration of the arguments presented, we agree with MTS that the Non-Parties have failed to present any persuasive reason as to why any of the subpoenas should be quashed. First, the Non-Parties' contention that the

subpoenas should be restricted solely to proceedings currently pending – and not contemplated actions – is incorrect as a matter of law. Many parties have made the same argument in connection with section 1782 and courts have uniformly rejected them. "Section 1782 is designed to support such contemplated claims, including civil and criminal proceedings to be initiated by a private party in a foreign tribunal, even when said proceedings are contemplated but have not yet commenced." *In re Application of Setraco Nigeria Ltd.*, 2013 WL 3153902, at *2 (citing *Intel,* 542 U.S. at 243 (establishing that, for purposes of section 1782, "it is not necessary . . . for the [adjudicative] proceeding to be pending at the time the evidence is sought, but only that the evidence is eventually to be used in such a proceeding"); *In re Application of Mesa Power Group, LLC,* 878 F.Supp.2d 1296, 1303 (S.D. Fla. 2012) ("Section 1782 may authorize and encourage judicial assistance even if the foreign proceeding has not commenced or advanced because § 1782 is not limited to proceedings that are pending . . . In fact, the proceedings need 'only . . . be within reasonable contemplation.'"); *In re Application of Inversiones y Gasolinera Petroleos Valenzuela, S.De R.L.,* 2011 WL 181311, at *10 (holding the fact that investigation into crimes "has not yet resulted in formal criminal proceedings does not mean that such proceedings are not still within 'reasonable contemplation'") (internal citation omitted); *In re Application of Wining (HK) Shipping Co. Ltd.,* 2010 WL 1796579 at *10 (S.D. Fla. 2010) (denying motion to quash order granting 1782 application in support of unfiled, anticipated, arbitration)).

Second, the time period suggested by MTS is appropriate because the basis for the materials sought is to discover whether transfers to U.S. based accounts and businesses occurred up to the present. As such, the subpoenas are not overbroad in temporal scope because they seek to capture all of the information relevant in a contemplated action for fraud. If the subpoenas were limited as the Non-Parties suggested, it would fundamentally weaken the purpose of the subpoenas in discovering relevant information on a suspected fraud.

Third, we agree with MTS that the Non-Parties have not demonstrated how the subpoenas are unduly burdensome or intrusive other than abstract assertions of privacy and confidentiality. The Non-Parties did not support their argument with any specific evidence to support their legal conclusions nor did they present any facts to bolster their position. *See Coker v. Duke & Co., Inc.*, 177 F.R.D. 682, 686 (M.D. Ala. 1998) (a party objecting on burdensomeness grounds must "substantiate that position with detailed affidavits or other evidence . . . and cannot rely on simple conclusory assertions"). "An objection must show specifically how a [discovery request] is overly broad, burdensome or oppressive, by submitting evidence or offering evidence which reveals the nature of the burden." *Chubb Integrated Systems Limited, v. National Bank of Washington,* 103 F.R.D. 52, 59–60 (D.D.C. 1984); *see also EEOC v. Quad/Graphics, Inc.,* 63 F.3d 642 (7th Cir. 1995).

In other words, the Non-Parties should have made a particular and specific demonstration of fact rather than relying on simple conclusory assertions because "[p]arties 'cannot invoke the defense of oppressiveness or unfair burden without

detailing the nature and extent thereof." *Porter v. Nationscredit Consumer Disc. Co.,* 2004 WL 1753255, at *1 (E.D. Pa. July 8, 2004) (quoting *Martin v. Easton Pub. Co.,* 85 F.R.D. 312, 316 (E.D. Pa. 1980)); *see also Ericson v. Ford Motor Co.,* 107 F.R.D. 92 (E.D. Ark. 1985) (finding that a mere showing of burden and expense is not enough). Therefore, we find that the final *Intel* factor weighs in favor of MTS and that the Non-Parties' Motion to quash the subpoenas, with respect to Sky Ocean and the Florida Banks, must be **DENIED**.[5]

### III. CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** that the Non-Parties' Motion to Quash Subpoenas is **GRANTED in part** and **DENIED in part**. [D.E. 14]. With respect to the subpoenas issued to Sky Ocean and the Florida Banks, any responsive documents should be produced within fourteen (14) days from the date of this Order. To this extent, the Non-Parties' Motion is **DENIED**.

As for the subpoenas directed to Mr. Pleshakov, we hold that MTS has not proffered sufficient facts to find that Mr. Pleshakov "resides" or can be "found" within the district to satisfy the statutory requirements under section 1782. As such, the Non-Parties' Motion, as it relates to Mr. Pleshakov, is **GRANTED**. MTS is permitted to take limited jurisdictional discovery to ascertain whether it can meet all of the statutory requirements of section 1782.

---

[5] To extent there are any remaining concerns about sensitive business information being produced outside the contours of this case, the parties shall work cooperatively to submit a stipulated protective order to the Court.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 1st day of August, 2017.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge