IN RE APPLICATION OF MTS BANK,
PURSUANT TO 28 U.S.C. § 1782,
FOR JUDICIAL ASSISTANCE IN
OBTAINING EVIDENCE FOR USE IN A
FOREIGN AND INTERNATIONAL
PROCEEDING.
_____/

**ORDER ON MTS BANK'S MOTION
TO JOIN AN ADDITIONAL PARTY APPLICANT**

This matter is before the Court on MTS's ("MTS") motion to include Kara Burkut Recovery Limited ("Kara Burkut") as a party applicant pursuant to 28 U.S.C. § 1782 and Federal Rules of Civil Procedure 19, 20, and 25. [D.E. 42]. Sky Ocean International Inc. ("Sky Ocean") responded on June 15, 2018 [D.E. 44] to which MTS replied on June 22, 2018. [D.E. 45].[1] Therefore, MTS's motion is now ripe for disposition. After careful consideration of the motion, response, reply, relevant authority, and for the reasons discussed below, MTS's motion is **GRANTED**.

## I.     BACKGROUND

MTS is a foreign bank registered in the Russian Federation. MTS had prior business and financial dealings with a private Russian airline company, commonly referred to as Transaero – a company also registered in the Russian Federation.

---

[1]    Alexander Krinichanskiy ("A.K.") does not oppose the relief sought in the motion.

1

Transaero is currently the subject of bankruptcy proceedings pending in Arbitrazh Court, Saint Petersburg, Russia. MTS is a creditor of Transaero, who was notified of the Russian bankruptcy, filed a claim in bankruptcy, and is a party to those proceedings. MTS previously issued an initial line of credit to Transaero in 2010, and subsequent loans were extended each year until Transaero's bankruptcy in 2015. At the time of the bankruptcy petition in 2015, Transaero owed MTS over fifty-seven million U.S. dollars and the debt remains unpaid while the bankruptcy case remains pending. Following the bankruptcy application, MTS Bank supposedly conducted a forensic audit of Transaero's accounting records and documents submitted in support of the credit line applications. The audit allegedly revealed widespread falsifications of data and hidden operational losses in Transaero's financials. The funds obtained from creditors were purportedly siphoned out of Transaero through creative financial structures, accounting loopholes, and payments of unlawfully inflated dividends.

A.K. is a former top-level executive of Transaero who allegedly negotiated the loans and signed the loan agreements on behalf of Transaero. Public records purportedly establish that A.K. owns and maintains a million-dollar residence at 16175 Rio Del Paz, Delray Beach, Florida, 33446 and maintains a local Florida phone number. [D.E. 3-2]. He apparently pays real estate taxes and has two automobiles registered in his name with the Florida Department of Highway Safety and Motor Vehicles.

In April 2017, MTS came to this Court *ex parte* seeking discovery – both testimony and documentary items – from A.K. and the Florida Banks regarding A.K.'s personal financial and account holdings. The purpose of the *ex parte* application is to obtain evidence from persons and custodians of records in Florida for use in the Russian bankruptcy court and in a contemplated civil action against Transaero's former directors and shareholders in the British Virgin Islands and/or Russia for debt recovery, securities fraud, civil money laundering, conversion, and other claims. [D.E. 1]. MTS is seeking to obtain documents and to depose A.K. on issues related to irregularities in financial statements, payments of dividends, transfers of funds received from MTS to personal U.S. based accounts and reinvestment in U.S. businesses. [D.E. 3-2]. The subpoenas in this case specify the areas of questioning and list specific documents that have been requested.

On June 6, 2017, after considering MTS Bank's application and being advised of the facts and issues presented, we granted the application and permitted MTS to conduct discovery. On June 16, 2017, A.K. filed a motion to quash the subpoenas directed at him. [D.E. 11]. On June 30, 2017, MTS Bank responded to the motion and presented unrebutted evidence of A.K.'s Florida's activities, including the following activities: ownership of Florida real estate, registration of two vehicles in Florida, and possession a Florida-based bank account. On July 25, 2017, the Court denied A.K.'s motion and directed compliance with the subpoenas within fourteen days of the Order. [D.E. 18].

On August 4, 2017, A.K. filed an emergency motion to stay enforcement of the Order. [D.E. 20]. In connection with his emergency motion, A.K. filed his Objections and Appeal with the District Judge. [D.E. 21]. On August 8, 2017, MTS Bank filed a response to AK's emergency motion and the Court issued an order denying AK's emergency motion and adopting the undersigned's Order. [D.E. 23]. On August 14, 2017, Bank of America produced A.K.'s bank records, which reflect payments for Rio Poco Homeowners Association, Comcast Cable, Florida Power and Light bills and other local expenses. The complete records produced by Bank of America support the allegation that A.K. maintained and operated a Florida-based bank account making local payments throughout the time period requested by the subpoena from 2010 until the date of the service of the subpoena in June 2017. On February 23, 2018, A.K. filed his second motion to quash and a motion for protective order. [D.E. 35]. We denied both motions on March 16, 2018. [D.E. 38].

On March 14, 2018, MTS entered into an agreement with Kara Burkut[2] to assign its right of recovery to a portion of the outstanding loan. On May 14, 2018, Kara Burkut filed its credit application for the assigned amount in the Russian bankruptcy case. Therefore, MTS seeks to join Kara Burkut as an applicant in this case with all rights to discovery that MTS has obtained thus far.

---

[2] Kara Burkut is a foreign corporation organized and existing under the laws of Cyprus.

## II. ANALYSIS

### A. *The Statutory Requirements of Section 1782*

The purpose of § 1782 is "to provide federal-court assistance in gathering evidence for use in foreign tribunals." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247 (2004); *see also In the Matter of Lancaster Factoring Co., Limited*, 90 F.3d 38, 41 (2d Cir. 1996) (finding that the purposes of § 1782 are "equitable and efficacious procedures in United States courts for the benefit of tribunals and litigants involved in foreign litigation" and "to encourag[e] foreign countries by example to provide similar assistance to our courts.") (internal citations omitted). The statute "is the product of congressional efforts, over the span of nearly 150 years, to provide federal-court assistance in gathering evidence for use in foreign tribunals." *Id*. at 248.

Pursuant to section 1782, a United States District Court, upon the application of an interested person, may order a person residing or found in the district to give testimony or produce documents for use in a foreign proceeding:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court. By virtue of his appointment, the person appointed has power to administer any necessary oath and take the testimony or statement. The order may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement or producing the

5

> document or other thing. To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

28 U.S.C. § 1782.

A district court must first determine whether there is a statutory basis for the § 1782 application. The Eleventh Circuit has found that there are four statutory requirements that must be considered in making that determination:

> A district court has the authority to grant an application for judicial assistance if the following statutory requirements in § 1782(a) are met: (1) the request must be made 'by a foreign or international tribunal,' or by 'any interested person'; (2) the request must seek evidence, whether it be the 'testimony or statement' of a person or the production of 'a document or other thing'; (3) the evidence must be 'for use in a proceeding in a foreign or international tribunal'; and (4) the person from whom discovery is sought must reside or be found in the district of the district court ruling on the application for assistance. 28 U.S.C. § 1782(a).

*In re Clerici*, 481 F.3d 1324, 1331–32 (11th Cir. 2007). If the statutory requirements are met, district courts must always determine whether the requested discovery complies with the Federal Rules. "For example, if the subpoena at issue is directed to a party that resides or is found in the district, same must comply with Fed. R. Civ. P. 45." *In re Chevron Corp.*, 2012 WL 3636925, at *6 (S.D. Fla. June 12, 2012) (citing *In re Application of Inversiones v. Gasolinera Petroleos Vanezuela, S. De R.L.*, 2011 WL 181311, at * 6 (S.D. Fla. Jan. 9, 2011)). Assuming that all of the above requirements are met, section 1782 "authorizes, but *does not require*, a federal district court to provide judicial assistance to foreign or international tribunals or to 'interested person[s]' in proceedings abroad." *Intel Corp.*, 542 U.S. at

247 (emphasis added); *see also United Kingdom v. United States*, 238 F.3d 1312, 1319 (11th Cir. 2001) ("[A] district court's compliance with a § 1782 request is not mandatory").

In addition to the statutory requirements, district courts must also consider several discretionary factors articulated by the Supreme Court in *Intel*, including: (1) whether the respondents are parties in a foreign proceeding, (2) the nature of the foreign tribunal, the character of the proceedings abroad, and the receptivity of the foreign tribunal to assistance from a U.S. federal court, (3) whether the discovery application conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States, and (4) whether the request is intrusive or burdensome. *See Intel Corp.*, 542 U.S. at 264-65. Ultimately, district courts must exercise their discretion to achieve the two aims of section 1782, which are to "provid[e] efficient means of assistance to participants in international litigation and [to] encourage[e] foreign countries by example to provide similar means of assistance to our courts." *In re Metallgesellschaft,* 121 F.3d 77, 79 (2d Cir. 1997).

MTS argues that Kara Burkut should be joined as a party applicant because it meets all of the statutory requirements under 28 U.S.C. § 1782. First, MTS claims that Kara Burkut is an "interested person" because it is a creditor in the ongoing Russian bankruptcy proceedings and will be a plaintiff in a debt recovery/civil fraud action. Next, MTS contends that the second factor has been met because Kara Burkut seeks the same testimony and documentary evidence as

7

requested in the subpoenas in this case. Third, MTS argues that the evidence sought will be used in a Russian Bankruptcy Court, which constitutes a "foreign tribunal" under 28 U.S.C. § 1782. And finally, MTS suggests that the fourth requirement has been met because Sky Ocean can be found in this district. Therefore, MTS concludes that all of the statutory requirements have been satisfied and that Kara Burkut should be joined as a party applicant.

Sky Ocean[3] opposes MTS's motion because Kara Burkut cannot satisfy the first or third requirements under 28 U.S.C. § 1782. First, Sky Ocean claims that Kara Burkut is not an "interested person" because the Russian Court presiding over the Transaero bankruptcy expressly rejected its application to be joined as a creditor in that proceeding.[4] Second, insofar as Kara Burkut is neither a party to the Transaero bankruptcy nor a recognized creditor, Sky Ocean suggests that Kara Burkut fails to meet the third requirement under 28 U.S.C. § 1782 because it cannot use any evidence obtained for use in a foreign proceeding. *See financialright GmbH v. Robert Bosch LLC*, 294 F. Supp. 3d 721, 732 (E.D. Mich. 2018) ("Applicants have failed to meet their burden to demonstrate that the discovery sought from Bosch is 'for use' in foreign proceedings.") (citing *Certain Funds,*

---

[3] Sky Ocean is a single-purpose entity that was formed on or about December 27, 2010 to purchase and take title to certain residential real property located in Palm Beach County, Florida. On July 29, 2014, a former officer of Sky Ocean caused the property to be sold and nearly all of the proceeds from that sale, constituting nearly all of the company's initial capital to be wired to an offshore account in the name of a third party.

[4] On May 14, 2018, Kara Burkut filed its creditor application in the Transaero bankruptcy. The Russian Bankruptcy Court issued an initial decision on May 23, 2018.

*Accounts &/or Inv. Vehicles v. KPMG, L.L.P.*, 798 F.3d 113, 120 (2d Cir. 2015) ("[T]heir application fails to satisfy the statute's 'for use' requirement, because the Funds have not met their burden of establishing that they are in a position to use the evidence they seek through their § 1782 application in those ongoing foreign proceedings.")). Third, even assuming that Kara Burkut satisfies all four statutory requirements, Sky Ocean argues that MTS's motion fails to meet all of the *Intel* discretionary factors because the Russian Bankruptcy Court has refused to accept Kara Burkut as a creditor. And by filing a motion to be joined in this action, Sky Ocean suggests that Kara Burkut is attempting "to circumvent proof-gathering restrictions or other policies of a foreign country or the United States." *Intel Corp.*, 542 U.S. at 265. Finally, Sky Ocean argues that MTS's motion must be denied because Kara Burkut was not formed until two years *after* the initiation of the Transaero bankruptcy. Sky Ocean believes that, if the Court were to permit Kara Burkut to join this action, then this would open the floodgates for any entity to join this case.

Our analysis begins with the question of whether Kara Burkut satisfies the first requirement under 28 U.S.C. § 1782. Sky Ocean claims that the Russian Bankruptcy Court expressly rejected Kara Burkut's application to be joined as a creditor and that it no longer qualifies as an "interested person." But, a review of the underlying record demonstrates that Sky Ocean's argument is misplaced. On May 14, 2018, Kara Burkut filed its creditor application to claim the assigned amount of Transaero's debt. The next day, the Russian Bankruptcy Court accepted

9

Kara Burkut's creditor application. On May 22, 2018, the Russian Bankruptcy Court issued an Order temporarily staying the proceedings on Kara Burkut's application because (1) "it is impossible to establish the sender and the recipient of the application from the cash receipt provided in the appendix," (2) the "documents confirming the legal status of the Limited Liability Company Kara Burkut Recovery Ltd . . . are not presented." [D.E. 44-2].

Sky Ocean's opposition lacks merit because the underlying reasons for a stay were purely technical and never reached the merits of Kara Burkut's application. The Order merely stayed the process pending a resubmission. On June 1, 2018, Kara Burkut resubmitted the postal receipts and copies of the corporate documents that the Bankruptcy Court requested in an attempt to correct the prior efficiencies in its application. [D.E. 45-2]. Then, on June 6, 2018, the Russian Bankruptcy Court confirmed its receipt of the application, lifted the stay, and scheduled a hearing for July 17, 2018 to consider the substitution of MTS with Kara Burkut for the assigned amount. [D.E. 45-3].

Absent a denial of its application on the merits, Kara Burkut qualifies an "interested person" under 28 U.S.C. § 1782 because it filed its application in the foreign action. Sky Ocean argues that a brief procedural delay undermines Kara Burkut's status as an "interested person," but that contention does not comport with the broad interpretation given to § 1782. In *Intel,* for example, the Supreme Court construed the statutory language of "any interested person" broadly to encompass "not only litigants before foreign or international tribunals, but also

foreign and international officials as well as any other person whether he be designated by foreign law or international convention or merely possess a reasonable interest in obtaining the assistance." 542 U.S. at 256–257 (quoting Hans Smit, *International Litigation Under the United States Code,* 65 Colum. L. Rev. 1015, 1027 (1965)). The Court further provided, "no doubt litigants are included among, and may be the most common example of, the 'interested person[s]' who may invoke § 1782." *Id.* at 256.

Here, Kara Burkut meets the "any interested person" standard because it has filed a formal application to be included in the litigation before the Russian Bankruptcy Court and that application remains pending for the Court's consideration. Until that application is denied on the merits, there is nothing more required to invoke § 1782. And even if Kara Burkut had not filed its application in the Russian case, it would still be an "interested person" under § 1782 because the agent of a party to a foreign litigation may qualify as an interested person "[b]y virtue of the agency and status of its principal." *Lancaster Factoring Co.*, 90 F.3d at 43. In other words, "a recognized relationship, such as that of an agent and principal . . . may be sufficient to make an otherwise stranger to the proceeding an 'interested person.'" *Certain Funds*, 798 F.3d at 120 (internal citation omitted).

In this case, there is a special relationship between MTS and Kara Burkut because both the assignee (Kara Burkut) and assignor (MTS) seek judicial assistance in compelling Transaero to repay its debts. The only material difference in this case, as opposed to a principal/agent relationship, is that MTS is not

11

providing financial payment for Kara Burkut to collect the debt owed. Instead, MTS is simply assigning Kara Burkut its stake in the repayment process. The relationship here is therefore stronger than that of a principal and agent because Kara Burkut is entitled to collect the full amount owed to MTS. Therefore, we conclude that Kara Burkut is an "interested person" under 28 U.S.C. § 1782 because (1) it is a participant in the Russian bankruptcy proceedings, and (2) there is a recognized relationship of assignee/assignor to the original party for the debt Transaero owes.

Sky Ocean's next argument fails for many of the same reasons because – as an "interested person" – the evidence sought is for use in a Russian bankruptcy proceeding, which is obviously a foreign tribunal within the statutory definition of § 1782. *See, e.g.*, *In re: Application of Joint Stock Co. Raiffeinsenbank*, 2016 WL 6474224, at *3 (N.D. Cal. Nov. 2, 2016) ("'[T]he discovery is for use in a proceeding before a foreign tribunal' because RFB seeks to use the discovery gained from Zubarev in the Russian Proceedings before the Arbitrazh Courts in Russia."). The remaining statutory requirements under section 1782 have also been satisfied because the information sought constitutes testimonial or documentary evidence. And based on the record presented, Sky Ocean can be found in this district because it (1) maintains a corporate address with a corporate agent, (2) retains a Florida bank account, (3) and litigates in Florida state courts. Furthermore, Sky Ocean was personally served with a subpoena in this action, which is enough to confer

12

jurisdiction over the entity under section 1782. Therefore, we find Kara Burkut meets all four statutory requirements under section 1782.

## B. *Intel's Discretionary Factors*

Once the statutory requirements of § 1782 have been met, district courts must also consider the four discretionary factors set forth in *Intel*, including: (1) whether the respondents are parties in a foreign proceeding because "the need for § 1782(a) generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant," (2) the nature of the foreign tribunal, the character of the proceedings abroad, and the receptivity of the foreign tribunal to assistance from a U.S. federal court, (3) whether the discovery application conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States, and (4) whether the request is intrusive or unduly burdensome. *Intel Corp.*, 542 U.S. at 264-65. While the four factors are commonly discussed on an individual basis, they "are not stand-alone categorical imperatives" but rather "involve overlapping considerations, [which] are considered collectively by the court." *In Matter of Appl. of Action & Protection Found. Daniel Bodnar*, 2014 WL 2795832, *5 (N.D. Cal. June 19, 2014) (quotation omitted). We will discuss the four discretionary factors in turn.

### 1. *The First Factor: Participants in a Foreign Proceeding*

The first *Intel* factor is not in dispute. But, we will address it anyways because Sky Ocean is a nonparticipant in the Russian bankruptcy proceedings based on the record presented. If Sky Ocean was part of the foreign proceedings, it

may have been an indicator that we should be less inclined to grant the discovery request because Sky Ocean would have already been subject to the jurisdiction of the foreign tribunal. Because there is no dispute that Sky Ocean is a non-participant in the Russian bankruptcy proceedings, this factor weighs in favor of granting MTS's motion.

### 2. *The Second Factor: Receptivity of the Foreign Tribunal*

The second *Intel* factor examines whether the foreign tribunal "is willing to consider the information sought." *Siemens AG v. W. Digital Corp.*, 2013 WL 5947973, *3 (C.D. Cal. Nov. 4, 2013). Another nation's limit on discovery "within its domain for reasons peculiar to its own legal practices, culture, or traditions . . . do[es] not necessarily signal objection to aid from United States federal courts." *Intel*, 542 U.S. at 261 (citing *In re Bayer AG*, 146 F.3d 188, 194 (3d Cir. 1998) ("[T]here is no reason to assume that because a country has not adopted a particular discovery procedure, it would take offense at its use.")).

Instead, courts look for "authoritative proof that a foreign tribunal would *reject* evidence obtained with the aid of § 1782." *In re Kreke Immobilien KG*, 2013 WL 5966916, at *5 (S.D.N.Y. Nov. 8, 2013) (quoting *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1100 (2d Cir. 1995)). "Such proof, as embodied in a forum country's judicial, executive, or legislative declarations that specifically address the use of evidence gathered under foreign procedures . . . provide helpful and appropriate guidance to a district court in the exercise of its discretion." *Euromepa*, 51 F.3d at 1100 (footnotes omitted); *Schmitz v. Bernstein Liebhard & Lifshitz, LLP.*,

14

376 F.3d 79, 84 (2d Cir. 2004) (denying discovery because "the German government was obviously unreceptive to the judicial assistance of an American federal court" since it requested the court to deny petitioner's § 1782 application); *In re Ex Parte Application of Qualcomm Inc.*, 162 F. Supp. 3d 1029, 1040 (N.D. Cal. 2016) (finding that the second *Intel* factor weighed in favor of respondents because the Korean Fair Trade Commission's amicus brief asked the court to deny petitioner's applications and that it had no need or use for the requested discovery). "Absent this type of clear directive, however, a district court's ruling should be informed by section 1782's overarching interest in 'providing equitable and efficacious procedures for the benefit of tribunals and litigants involved in litigation and international aspects.'" *Euromepa*, 51 F.3d at 1100 (citation omitted).

Here, the second factor weighs in favor of granting MTS's motion because it is well established that Russian courts are receptive to discovery requests in section 1782 cases:

> There is no indication, let alone any authoritative proof, that the Russian court would reject as evidence any documents gathered with the aid of the witnesses' deposition testimony, nor that it would reject such testimony if offered in support of a request by Imanagement for a Russian court order for the production of particular documents or other evidence. The Court therefore cannot say that the Russian court's statement constitutes authoritative proof that the Russian court would reject evidence gathered with the assistance of discovery under § 1782, or that the refusal to admit the deposition transcripts as testimonial evidence signals a 'lack of receptivity' to 'U.S. federal-court judicial assistance' such that the Court should use its discretion to deny Imanagement's request for discovery.

*In re Imanagement Servs., Ltd.*, 2005 WL 1959702, at *4 (E.D.N.Y. Aug. 16, 2005) (citing *Intel Corp.*, at 264); *see also In re: Application of Joint Stock Co.*

15

*Raiffeinsenbank*, 2016 WL 6474224, at *5 ("The Court is unaware of any authoritative source suggesting the Arbitrazh Courts would be unreceptive to the discovery RFB seeks."); *In re Kolomoisky*, 2006 WL 2404332, at *2 (S.D.N.Y. Aug. 18, 2006) (finding no evidence that the Russian government or the court where the Moscow Action occurred opposes Petitioner's discovery request).

Sky Ocean suggests that the second factor weighs against MTS's motion because the Russian Bankruptcy Court recently denied Kara Burkut's application to join the foreign proceedings. But, as we stated above, this argument is belied by the underlying record and the resubmission of Kara Burkut's application for the Court's review. And to the extent that there are any doubts on whether the Russian tribunal would consider the evidence sought, a suspicion that the evidence gathered would ultimately be rejected is not enough to overcome the presumption that district courts allow for discovery to proceed under section 1782 to promote the statute's goals of efficiency and comity. *See Euromepa,* 51 F.3d at 1100; *In re Kreke Immobilien KG*, 2013 WL 5966916, at *5 (S.D.N.Y. Nov. 8, 2013) ("Rather than deny a § 1782 request because it suspects that the evidence gathered would ultimately be rejected by the foreign tribunal, a U.S. district court should presumptively allow discovery to the extent that such a grant would promote the statute's goals of efficiency and comity.") (citation omitted). Indeed, there are cases holding that "Russia may actually be receptive to such discovery," and therefore we conclude that the second *Intel* factor weighs in favor of granting MTS's motion. *In re: Application of Joint Stock Co. Raiffeinsenbank*, 2016 WL 6474224, at *5; *see also In re Kreke*

16

*Immobilien KG*, 2013 WL 5966916, at *1 ("In the absence of authoritative proof that a foreign tribunal would reject evidence obtained with the aid of section 1782, a district court should err on the side of permitting discovery." (citations and internal quotation marks omitted)).

### 3. *The Third Factor: Foreign Proof-Gathering Restrictions*

The third *Intel* factor asks whether the § 1782 request "attempt[s] to circumvent foreign proof-gathering limits or other policies of a foreign country or the United States." *Intel*, 432 U.S. at 264-265. "Although courts need not determine if an applicant has exhausted its discovery attempts abroad, 'a perception that an applicant has 'side-stepped' less-than-favorable discovery rules by resorting immediately to § 1782 can be a factor in a court's analysis.'" *In re: Application of Joint Stock Co. Raiffeinsenbank*, 2016 WL 6474224, at *6 (quoting *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2013 WL 183944, at *3 (N.D. Cal. Jan. 17, 2013)). "Put differently, the § 1782 applicant's conduct in the foreign forum is not irrelevant." *In re Appl. of Gilead Pharmasset LLC*, 2015 WL 1903957, at *4 (D. Del. Apr. 14, 2015) (quoting *In re IPC Do Nordeste, LTDA*, 2012 WL 4448886, *9 (E.D. Mich. Sept. 25, 2012)). "This is not the same as a foreign discoverability requirement; the fact that a § 1782 application requests documents that would not be discoverable by the foreign court if those documents were located in the foreign jurisdiction is not enough to render the application a 'circumvention' of foreign rules. However, this factor suggests that a district court should be vigilant against a petitioner's attempt to 'replace a [foreign] decision with one by [a U.S.] court.'" *In*

17

*re Kreke Immobilien KG*, 2013 WL 5966916, at *6 (S.D.N.Y. Nov. 8, 2013) (citations omitted).

Sky Ocean argues that the inclusion of Kara Burkut in this case would open the floodgates for any entity to join MTS's application for discovery. But, Sky Ocean's contention is both conclusory and misplaced because it ignores the statutory requirements needed to invoke section 1782 and the discretionary *Intel* factors that safeguard against any potential abuse of this statute. Moreover, we have no reason to believe that there are policies or laws in Russia or the United States that would preclude Kara Burkut from seeking discovery in this case. There are also several cases where courts have found Russian bankruptcies to fall within the scope of § 1782. *See, e.g.*, *Lancaster Factoring Co.*, 90 F.3d at 42 ("A bankruptcy proceeding, by its nature, is one in which the value of the debtor's estate is adjudicated. Such a proceeding is within the intended scope of § 1782.").

We are therefore unaware of any restrictions imposed by Russian courts in proof-gathering procedures that would prohibit Kara Burkut from obtaining and introducing the discovery sought via section 1782. Because there is no evidence to suggest that Kara Burkut has received an adverse decision from a Russian tribunal regarding prior discovery requests or is seeking relief under section 1782 as an attempt to sidestep Russian policies and procedures, we conclude that the third *Intel* factor favors MTS's motion.

### *4. <u>The Fourth Factor: Overbroad and Unduly Burdensome</u>*

The fourth *Intel* factor is not at issue, but it relates to whether an application contains "unduly intrusive or burdensome requests," *Intel Corp.,* 542 U.S. at 265, is "made in bad faith, for the purpose of harassment," *Euromepa S.A.,* 51 F.3d at1101 n.6, or is part of a "fishing expedition," *In re Request for Assistance from Ministry of Legal Affairs of Trinidad and Tobago,* 848 F.2d 1151, 1156 (11th Cir. 1988), *abrogated on a different ground by Intel Corp.,* 542 U.S. at 259. To meet this burden, a party cannot rely on conclusory assertions, but must support its argument with specific evidence. *See Coker v. Duke & Co., Inc.*, 177 F.R.D. 682, 686 (M.D. Ala. 1998) (finding that a party objecting on burdensomeness grounds must "substantiate that position with detailed affidavits or other evidence . . . and cannot rely on simple conclusory assertions").

"An objection must show specifically how a [discovery request] is overly broad, burdensome or oppressive, by submitting evidence or offering evidence which reveals the nature of the burden." *Chubb Integrated Systems Limited, v. National Bank of Washington,* 103 F.R.D. 52, 59–60 (D.D.C. 1984); *see also EEOC v. Quad/Graphics, Inc.,* 63 F.3d 642 (7th Cir. 1995). This means that a particular and specific demonstration of fact – rather than conclusory assertions – is needed to sway the fourth *Intel* factor "[p]arties 'cannot invoke the defense of oppressiveness or unfair burden without detailing the nature and extent thereof." *Porter v. Nationscredit Consumer Disc. Co.,* 2004 WL 1753255, at *1 (E.D. Pa. July 8, 2004) (quoting *Martin v. Easton Pub. Co.,* 85 F.R.D. 312, 316 (E.D. Pa. 1980)); *see also*

19

*Ericson v. Ford Motor Co.,* 107 F.R.D. 92 (E.D. Ark. 1985) (finding that a mere showing of burden and expense is not enough). Because neither party presented an argument suggesting that any discovery requests might be overbroad or unduly burdensome, this factor is neutral in the consideration of MTS's motion.

### III.    CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** that MTS's motion to join Kara Burkut as a third party applicant in this action is **GRANTED**. [D.E. 42].

**DONE AND ORDERED** in Chambers at Miami, Florida, this 27th day of June, 2018.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge