UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 17-21545-MC-WILLIAMS/TORRES

IN RE APPLICATION OF MTS BANK,
OPEN JOINT STOCK COMPANY,
a foreign corporation,

    Applicant.
_____/

ORDER ON MOTION FOR SANCTIONS
AND TO COMPEL A JURISDICTIONAL DEPOSITION

This matter is before the Court on Kara Burkut Recovery Limited's ("Kara Burkut") motion for sanctions under Fed. R. Civ. P. 30 and 37 and to compel Alexander Pleshakov ("Mr. Pleshakov") to attend a jurisdictional deposition. [D.E. 72-73]. Mr. Pleshakov responded to Kara Burkut's motion on January 8, 2021 [D.E. 79] to which Kara Burkut replied on January 15, 2021. [D.E. 80]. Therefore, Kara Burkut's motion is now ripe for disposition. After careful consideration of the motion, response, reply, relevant authority, and for the reasons discussed below, Kara Burkut's motion is **GRANTED**.[1]

---

[1]    On December 16, 2020, the Court referred Kara Burkut's motions to the undersigned Magistrate Judge for disposition. [D.E. 75].

## I.     BACKGROUND

MTS Bank ("MTS") is a foreign bank registered in the Russian Federation. MTS had prior business and financial dealings with a private Russian airline company, commonly referred to as Transaero – a company registered in the Russian Federation. Transaero is currently the subject of bankruptcy proceedings pending in Arbitrazh Court in Saint Petersburg, Russia. MTS is a creditor of Transaero, who was notified of the Russian bankruptcy, filed a claim in bankruptcy, and is a party to those proceedings.

Mr. Pleshakov is the founder and a former CEO of Transaero. Alongside his spouse, Olga Pleshakov, and his mother, Tatiana Anodina, Mr. Pleshakov is the majority shareholder of Transaero. In 2010, Transaero's management approached MTS to open a line of credit for the purpose of expanding commercial operations. Mr. Pleshakov signed Transaero's financial reports and made representations of the company's financial stability. Olga Pleshakov and Alexander Krinichansky negotiated the loans and assured MTS of the company's solvency and signed the loan agreements on the company's behalf. MTS issued the initial line of credit to Transaero in 2010, and subsequent loans were extended each year until the company's bankruptcy in 2015.

At the time of filing the bankruptcy petition, Transaero owed MTS 57 million U.S. dollars and the debt remains unpaid while the bankruptcy case remains pending. Following the bankruptcy application, MTS conducted a forensic audit of Transaero's accounting records and documents submitted in support of the credit

2

applications. The audit revealed widespread falsifications of data and hidden operational losses in Transaero's financials. The funds obtained from creditors were siphoned out of Transaero through creative financial structures, accounting loopholes, and payments of unlawfully inflated dividends to Transaero's shareholders, including Mr. Pleshakov and Sky Stream.

On April 26, 2017, MTS filed an *ex parte* application to obtain evidence from persons and custodians of records in Florida for use in the Russian bankruptcy court and in a contemplated civil action against Transaero's former directors and shareholders in the British Virgin Islands and/or Russia for debt recovery, securities fraud, civil money laundering, conversion, and other claims. [D.E. 1]. MTS sought to obtain documents and to depose Mr. Pleshakov on issues related to irregularities in financial statements, payments of dividends, transfers of funds received from MTS to personal U.S. based accounts and reinvestment in U.S. businesses. [D.E. 3-2].

On August 1, 2017, the Court authorized MTS to conduct limited jurisdictional discovery of Mr. Pleshakov so that the bank could determine whether he resides or can be found in this district for the purpose of seeking relief under 28 U.S.C. § 1782. [D.E. 19]. Mr. Pleshakov objected to that order and the District Court overruled his objections on January 31, 2018. [D.E. 33]. On July 10, 2018, the Court granted MTS's request for a jurisdictional deposition and Mr. Pleshakov

appealed that order to the Eleventh Circuit.² [D.E. 47]. The Court dismissed Mr. Pleshakov's appeal on March 4, 2020 for lack of jurisdiction. [D.E. 70].

Following the Eleventh Circuit's dismissal, Kara Burkut's counsel, Anne Brown ("Ms. Brown"), contacted Mr. Pleshakov's counsel, Samuel Sheldon ("Mr. Sheldon") to schedule a date for a deposition. After going back and forth for several months, the parties agreed to a date during the last week of October 2020. On October 15, 2020, Ms. Brown emailed Mr. Sheldon to confirm that she was scheduling Mr. Pleshakov's deposition to take place on the morning of October 30, 2020. [D.E. 73-7 at 9]. After the parties confirmed the time for the deposition, Ms. Brown emailed Mr. Sheldon on October 20, 2020 to confirm if Mr. Pleshakov would appear as requested. *See id.* at 7. Mr. Sheldon responded on October 21, 2020 that he was uncertain if Mr. Pleshakov would have internet access on October 30th because of hostilities in Azerbaijan. *See id.* at 6-7. Ms. Brown replied later that night, suggesting that Mr. Pleshakov seek assistance with any of the international law firms in the area because they would be able to assist with any remote deposition and ensure a reliable connection. *See id.* at 5-6.

Mr. Sheldon's response was that his client was neither a plaintiff nor a defendant in this case, that Azerbaijan was not a "safe place right now," and that Mr. Pleshakov "has legitimate security concerns that preclude any in-person appearance at any particular place." *Id.* at 5. Mr. Sheldon also stated a concern

---

² After Mr. Pleshakov filed his appeal, MTS filed an unopposed motion for substitution of party [D.E 67] because it assigned a portion of the debt owed to Kara Burkut for all claims and rights related to the recovery of funds in this action. The Court granted that motion on December 10, 2019 and substituted Kara Burkut in place of the initially named applicant. [D.E. 68].

about Ms. Brown's proposed exhibits because he was unable to view them prior to the deposition:

> As for the password-protected files you propose using as exhibits, it is highly suspect that you are unwilling to disclose your exhibits in advance. I can only assume it is because you fully intend to abuse this opportunity to examine Mr. Pleshakov about his "ties to and activity in Florida" by asking questions outside of that limited scope. Know right now that I fully intend to instruct him not to answer any question that isn't related to his ties to and/or activity in Florida. Any questions about where outside of the United States Mr. Pleshakov resides or can be found will be answered only with the country.

*Id*.

Ms. Brown responded that she was "fully familiar with the facts of this case," that the exhibits related specifically to activities in Florida, and that she needed confirmation that Mr. Pleshakov would appear for his video deposition on October 30, 2020. *Id*. at 4. Ms. Brown then emailed Mr. Sheldon again on October 25, 2020, seeking confirmation of the deposition date and Mr. Sheldon responded the next day asking who would be in attendance for the deposition. *See id*. at 2-3. Ms. Brown responded to Mr. Sheldon's question on the attendees and sought confirmation on whether:

> (1) we are proceeding with the deposition on October 30, 2020 at 10 am, and that (2) your client has internet connection, a reliable phone line in the event of internet interruption, and that (3) he will cooperate with the remote deposition instructions and the procedure for the presentation of the exhibits as directed.

*Id*. at 1. Mr. Sheldon's reply was that "Mr. Plehsakov [sic] will appear 10/30, but . . . will need to be by phone because he is certain that internet will not work. Please send me the exhibits, so I can forward them to him." *Id*.

5

Over the next several days, Ms. Brown made arrangements for the virtual deposition, including technical support, translation, compilation, and encryption services. She then served the notice of deposition. [D.E. 73-4]. On October 30, 2020, Mr. Sheldon emailed Ms. Brown to inform her that he was terminated as Mr. Pleshakov's counsel and that he would speak further with his client. [D.E. 73-5]. Mr. Pleshakov apologized for the late notice and asked to cancel the deposition so that new lawyers could be retained. When Ms. Brown asked Mr. Sheldon if he would still appear for the deposition, the latter confirmed that neither he nor his client would do so:

> As set forth below, Alexander will not be appearing and I do not know whether I am still his lawyer, so I don't see the point of logging into Zoom and waiting for the reporter to issue a certificate of non-appearance. You don't need me for that.

[D.E. 73-8 at 1]. The court reporter recorded a certificate of non-appearance.

## II.   ANALYSIS

Kara Burkut seeks sanctions and an order compelling Mr. Pleshakov to appear for a deposition because the latter has delayed jurisdictional discovery for several months and, after finally agreeing upon a date, failed to appear without any justifiable reason. Kara Burkut says that Mr. Pleshakov's decision to change counsel at the eleventh hour is not credible and that the former incurred substantial costs in preparing for a deposition that never took place. These costs include $220 for a translator, $435 for a court reporter, $350 for a videographer, and

6

$20,194 in attorneys' fees.[3] Kara Burkut also seeks reimbursement for the time spent preparing for the deposition, including the underlying motion, and states that it is prepared to present invoices and billing records for the Court's review. Therefore, to remedy Mr. Pleshakov's violation of the Federal Rules and prior court orders, Kara Burkut seeks a total of $21,199 in fees and costs.

Mr. Pleshakov says that the motion lacks merit because he tried to coordinate a deposition but that the global pandemic and unrest in his country made matters difficult to do so. He also claims that Ms. Brown failed to mention that she dumped 38 documents on his former lawyer, Mr. Sheldon, the day prior to his deposition and that the items were password protected and otherwise inaccessible. Mr. Pleshakov viewed this as an attempt to ambush him with questions entirely unrelated to whether he resides or can be found in Florida and therefore he chose to terminate his lawyer in favor of retaining new counsel to address these concerns. Mr. Pleshakov points to the letter he sent to Mr. Sheldon on October 30, 2020 as the basis for his decision because, in that communication, he describes the need to hire additional attorneys to assess any legal risks before proceeding with the scheduled deposition:

> Due to [Mr. Pleshakov's] understanding of the deposition's nature as a limited jurisdictional deposition, and as was mentioned by Ms. Brown earlier, the deposit was not supposed to take a long time. A day before the deposition, he was notified about the significant amount of documents that have been prepared by the counterparty for the deposition that will be accessible only at the time of deposition. Along with that, the legal representative of Kara Burkut did not agree to make available the questions and materials for the deposition any time

---

[3] Ms. Brown and her colleague, Jeffrey Sloman, spent a total of 47.4 hours preparing for Mr. Pleshakov's deposition.

7

> before the deposition. This all suggested the assumption that the nature of the deposition was not planned to be limited to "ties to and/or activity in Florida" and will be used to obtain a broad spectrum of confidential personal information without the authorization to do so and will have the goal to circumvent the ordinary course of the bankruptcy procedure in Russia.
>
> In this regard, Mr. Pleshakov understands that he will need to make further consultation with dedicated legal experts in the United States and Russian Federation to be able to evaluate the risks and be adequately prepared for the deposition. Because of that, Mr. Pleaskov is forced to change his legal representatives in this matter for the specialist of cross-border law and cross-border bankruptcy. He is now in the process of consultations with the possible new counsels.

[79-5 at 3].

Taking this letter into consideration, Mr. Pleshakov maintains that he was substantially justified in terminating the deposition because Kara Burkut attempted to ambush him with a deposition that would go well beyond the scope of these proceedings. Mr. Pleshakov also accuses Kara Burkut of acting in bad faith and says that the best course of action would be for the Court to further define the limited scope of the jurisdictional deposition so that there can be no confusion as to what questions should be allowed. For these reasons, Mr. Pleshakov concludes that his conduct does not warrant sanctions because neither side is blameless for the cancellation of the deposition and that, at the very least, he should be given an additional opportunity to comply with his discovery obligations. *See, e.g.*, *Salthouse v. CVS Fla. Distribution, LLC*, 2018 WL 1875842, at *2 (S.D. Fla. Mar. 22, 2018) ("This Court gives Defendants an additional opportunity to comply with discovery obligations before awarding fees and costs. This Court will, however, continue to monitor future discovery disputes for careful, good faith, and common sense

8

compliance with all discovery obligations and Orders in this case. Should Defendants not bring themselves into full compliance by the deadlines stated above, then Plaintiff may file a new Motion for Sanctions.").[4]

The Federal Rules of Civil Procedure govern discovery matters in a Section 1782 action. *See* 28 U.S.C. § 1782(a); *see also Sergeeva v. Tripleton Int'l Ltd.*, 834 F.3d 1194, 1202 (11th Cir. 2016) (affirming the district court's contempt order in a Section 1782 action after the respondent had ample opportunity to show cause as to why it should not be sanctioned); *In re FG Wilson (Engineering) Ltd.*, 2011 WL 5361073 (S.D. Fla. Nov. 7, 2011) (awarding expenses in a Section 1782 action pursuant to the provisions of Rule 37). District Courts are given considerable discretion under the Federal Rules of Civil Procedure to specify the conditions for discovery. One of the primary ways of enforcing these conditions is through the power to impose fees and sanctions. Without this authority, it would be difficult for the Court to follow through on one of Section 1782's primary aims: to provide efficient means of assistance to participants in international litigation in our federal courts. *See Application of Malev Hungarian Airlines*, 964 F.2d 97, 99 (2d Cir. 1992) (citation omitted).

Pursuant to Rule 37(d)(1)(A)(i), the Court may order sanctions if "a party or a party's officer, director, or managing agent—or a person designated under Rule

---

[4] Mr. Pleshakov argues that the motion for sanctions is untimely under Local Rule 26.1 because the jurisdictional deposition was scheduled to take place on October 30, 2020 and Kara Burkut failed to file its motion within 30 days from the date of the discovery dispute. He also states that the sanctions requested are unreasonable and that Kara Burkut failed to attach any billing records to substantiate its request for approximately $21,000 in fees and costs.

9

30(b)(6) or 31(a)(4)— fails, after being served with proper notice, to appear for that person's deposition." The failure to appear for a deposition "is not excused on the ground that the discovery sought was objectionable, unless the party failing to act has a pending motion for a protective order under Rule 26(c)." Fed. R. Civ. P. 37(d)(2). If a court awards sanctions under Rule 37(d), it "must require the party failing to act, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(d)(3). "No showing of willfulness or bad faith or fault is required." *Joe Hand Promotions, Inc. v. Bowers*, 2020 WL 4557072, at *2 (N.D. Ga. Feb. 25, 2020) (quoting *Betancourt v. Gen. Servs. of VA, Inc.*, 2015 WL 13792037, at *2 (M.D. Fla. May 22, 2015)).

Having established the relevant legal principles, Mr. Pleshakov has not presented any substantial justification for his failure to appear at his deposition. His main contention is that he was justified in terminating[5] the deposition because Kara Burkut served him with 38 documents the day prior. But, the failure to appear for a deposition "is not excused on the ground that the discovery sought was objectionable, unless the party failing to act has a pending motion for a protective order under Rule 26(c)." Fed. R. Civ. P. 37(d)(2). Mr. Pleshakov did neither and his failure to appear – let alone seek – a protective order severely undercuts a finding that his actions were substantially justified or harmless. *See Knight ex rel. Kerr v.*

---

[5] Mr. Pleshakov says repeatedly in his response that he "terminated" the deposition, but that is not entirely accurate because the deposition never began in the first place. The more accurate description is that he cancelled it.

10

*Miami-Dade Cnty.*, 856 F.3d 795, 812 (11th Cir. 2017) ("Substantially justified means that reasonable people could differ as to the appropriateness of the contested action.") (quoting *Maddow v. Procter & Gamble Co.*, 107 F.3d 846, 853 (11th Cir. 1997)).

We are also unconvinced that the 38 documents that Kara Burkut served the day prior to the deposition rise to the level of a "document dump". While the file size of the documents exceeded 42 megabytes, Ms. Brown gave Mr. Sheldon repeated notice that these items were forthcoming and the latter never objected to the date and time of service. Ms. Brown also assured Mr. Sheldon that, despite his concerns, all the documents would be tailored specifically to whether Mr. Pleshakov resides or can be found in Florida. And even if the documents that Ms. Brown served were somehow unreasonable, Mr. Pleshakov and his lawyer had several options at their disposal rather than just cancelling the deposition. They could have reviewed the documents[6], preserved any objections on the record, or otherwise filed a motion for protective order. But, Mr. Pleshakov did none of the above. He opted to just cancel the deposition after all the costs and expenses had already been incurred in making the deposition possible. And now he seeks to avoid paying any fees or costs because of that decision.

---

[6] Neither Mr. Pleshakov nor Mr. Sheldon even looked at the documents prior to cancelling the deposition. Instead, Mr. Pleshakov assumed that the documents were outside the scope of this case but he never verified if this was true. He blames Ms. Brown for not providing him with a workable password to access the materials, yet noticeably avoids any mention of whether he asked for help in reviewing the materials. [D.E. 79 at 10 ("It should be noted that each of the 38 documents were password protected and Applicant's Counsel still has not provided the password to access any of the 38 documents.")].

Unfortunately for Mr. Pleshakov, actions have consequences especially where, as here, a party fails to attend a deposition, neglects to pursue any of the options available under the Federal Rules, and that decision leaves the opposing party holding a bag of expenses that it incurred to its detriment. *See, e.g.*, *Woliner v. Sofronsky*, 2018 WL 5918873, at *6 (S.D. Fla. Nov. 13, 2018) ("Plaintiff's failure to attend the Court-Ordered September 24, 2018 deposition was not substantially justified and there are no circumstances which make such an award unjust.") (citing *Dude v. Cong. Plaza, LLC*, 2018 WL 3432714 (S.D. Fla. July 16, 2018) (imposing sanctions for fees and costs imposed against plaintiff for failure to attend a deposition, failure to attend mediation, and failure to comply with court orders); *Dude v. Cong. Plaza, LLC*, 2018 WL 3848431 (S.D. Fla. Aug. 13, 2018) (awarding $39,622.00 in fees and $2,090.83 in costs for a party's failure to attend a deposition)).

Mr. Pleshakov tries to justify his decision to cancel the deposition because of legal concerns that Ms. Brown might question him on matters outside the scope of this case. That contention fails to hold any water because that was always a possibility given the arguments presented throughout this case. Indeed, Mr. Pleshakov has repeatedly argued that the Court does not have jurisdiction over him and that the actual aim for the discovery requested is to misuse information in a collateral bankruptcy proceeding pending in Russia. So, if this has always been a concern, Mr. Pleshakov and his lawyer should have been well armed in advance of the deposition on how to handle any documents or questions that might exceed the

scope of the jurisdictional discovery that the Court authorized. To suggest that this possibility suddenly fell out of the sky is not compelling at all.

Even worse, since the date that Mr. Pleshakov cancelled the deposition, the parties have still not agreed upon a new date for his deposition. And almost a year has now passed since the Eleventh Circuit dismissed Mr. Pleshakov's appeal. This back and forth on scheduling a deposition cannot go on any longer. The parties are well aware of what needs to be done and the questions that fall within the scope of whether Mr. Pleshakov has ties or activities to Florida. It is therefore unclear why a video conferencing deposition cannot be scheduled so that this case can proceed on the merits. And while Mr. Pleshakov suggests that Ms. Brown has previously demanded that he attend an in-person deposition, that is equally unfounded. The underlying communications show that Ms. Brown only offered Mr. Pleshakov an *option* of going to an international law firm so that he could have internet access and any technical problems that might arise could be resolved. Nothing in any of the emails included a demand for an in-person appearance. Mr. Pleshakov, of course, declined that option for the October deposition that never took place and that is why other arrangements were made with a separate company, Veritex Virtual, to secure a remote deposition.

With all that being said, Mr. Pleshakov is responsible for Kara Burkut's fees and costs. The only question remaining is the amount and whether that request is reasonable. Kara Burkut did not include any invoices or billing records in the motion for sanctions. And the reason it might have omitted those items is because

13

it wanted to first establish its entitlement to fees and costs before putting forth reasons on why any specific request is reasonable. We will therefore allow Kara Burkut to file a separate motion that includes a request for fees and costs, including any billing records and other invoices that substantiate the expenses that it incurred. For now, however, it is clear that Mr. Pleshakov's actions were not substantially justified or harmless and that Kara Burkut should be entitled to a fee and cost award.

As for Kara Burkut's request for Mr. Pleshakov to attend a jurisdictional deposition, that motion is also well taken because far too much time has passed without coordinating a deposition that should have taken place many months ago. The parties shall therefore meet and confer on an agreed upon date and time for Mr. Pleshakov's deposition that *must* take place within twenty-one (21) days from the date of this order. If Mr. Pleshakov fails to attend another deposition during this time period, additional sanctions may follow. Accordingly, Kara Burkut's motion for sanctions and to compel Mr. Pleshakov to attend a jurisdictional deposition is **GRANTED**.[7]

---

[7] To the extent Kara Burkut's motion is untimely under the Court's Local Rules, we exercise our discretion to consider it on the merits. *See, e.g., Sandalwood Estates Homeowner's Ass'n, Inc. v. Empire Indem. Ins. Co.*, 2010 WL 411088, at *2 (S.D. Fla. Jan. 29, 2010) ("Local Rule 26.1(H)(1) is permissive and affords the Court discretion in whether to consider a late-filed motion."); *Kabula v. S. Homes of Homestead VIII, Inc.*, 2008 WL 4691983, at *1 (S.D. Fla. Oct. 22, 2008) ("[B]ecause S.D. Fla. L.R. 26.1(H) is permissive, this Court has discretion to grant the Motion to Compel, even if it was filed late.").

### *III.   CONCLUSION*

For the foregoing reasons, Kara Burkut's motion for sanctions and to compel Mr. Pleshakov to attend a deposition is **GRANTED**.  Any supplemental motion for fees and costs shall be filed within fourteen (14) days from the date of this order. The parties shall also meet and confer on an agreed upon date and time for Mr. Pleshakov's deposition that must take place within twenty-one (21) days from the date of this order.

**DONE AND ORDERED** in Chambers at Miami, Florida this 27th day of January 2021.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge